# FRANCIS, WARDEN v. FRANKLIN

No. 83–1590.   Argued November 28, 1984—Decided April 29, 1985

Brennan, J., delivered the opinion of the Court, in which White, Marshall, Blackmun, and Stevens, JJ., joined.  Powell, J., filed a dissenting opinion, *post*, p. 327.  Rehnquist, J., filed a dissenting opinion, in which Burger, C. J., and O'Connor, J., joined, *post*, p. 331.

*Susan V. Boleyn,* Assistant Attorney General of Georgia, argued the cause for petitioner. With her on the brief were *Michael J. Bowers,* Attorney General, *James P. Googe, Jr.,* Executive Assistant Attorney General, *Marion O. Gordon,* First Assistant Attorney General, and *William B. Hill, Jr.,* Senior Assistant Attorney General.

*Ronald J. Tabak* argued the cause for respondent. With him on the brief was *John Charles Boger.*

JUSTICE BRENNAN delivered the opinion of the Court.

This case requires that we decide whether certain jury instructions in a criminal prosecution in which intent is an element of the crime charged and the only contested issue at trial satisfy the principles of *Sandstrom* v. *Montana,* 442 U. S. 510 (1979). Specifically, we must evaluate jury instructions stating that: (1) "[t]he acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted" and (2) "[a] person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted." App. 8a–9a. The question is whether these instructions, when read in the context of the jury charge as a whole, violate the Fourteenth Amendment's requirement that the State prove every element of a criminal offense beyond a reasonable doubt. See *Sandstrom, supra; In re Winship,* 397 U. S. 358, 364 (1970).

I

Respondent Raymond Lee Franklin, then 21 years old and imprisoned for offenses unrelated to this case, sought to escape custody on January 17, 1979, while he and three other prisoners were receiving dental care at a local dentist's office. The four prisoners were secured by handcuffs to the same 8-foot length of chain as they sat in the dentist's waiting room. At some point Franklin was released from the chain,

taken into the dentist's office and given preliminary treatment, and then escorted back to the waiting room. As another prisoner was being released, Franklin, who had not been reshackled, seized a pistol from one of the two officers and managed to escape. He forced the dentist's assistant to accompany him as a hostage.

In the parking lot Franklin found the dentist's automobile, the keys to which he had taken before escaping, but was unable to unlock the door. He then fled with the dental assistant after refusing her request to be set free. The two set out across an open clearing and came upon a local resident. Franklin demanded this resident's car. When the resident responded that he did not own one, Franklin made no effort to harm him but continued with the dental assistant until they came to the home of the victim, one Collie. Franklin pounded on the heavy wooden front door of the home and Collie, a retired 72-year-old carpenter, answered. Franklin was pointing the stolen pistol at the door when Collie arrived. As Franklin demanded his car keys, Collie slammed the door. At this moment Franklin's gun went off. The bullet traveled through the wooden door and into Collie's chest killing him. Seconds later the gun fired again. The second bullet traveled upward through the door and into the ceiling of the residence.

Hearing the shots, the victim's wife entered the front room. In the confusion accompanying the shooting, the dental assistant fled and Franklin did not attempt to stop her. Franklin entered the house, demanded the car keys from the victim's wife, and added the threat "I might as well kill you." When she did not provide the keys, however, he made no effort to thwart her escape. Franklin then stepped outside and encountered the victim's adult daughter. He repeated his demand for car keys but made no effort to stop the daughter when she refused the demand and fled. Failing to obtain a car, Franklin left and remained at large until nightfall.

Shortly after being captured, Franklin made a formal statement to the authorities in which he admitted that he had

shot the victim but emphatically denied that he did so voluntarily or intentionally. He claimed that the shots were fired in accidental response to the slamming of the door. He was tried in the Superior Court of Bibb County, Georgia, on charges of malice murder[1]—a capital offense in Georgia— and kidnaping. His sole defense to the malice murder charge was a lack of the requisite intent to kill. To support his version of the events Franklin offered substantial circumstantial evidence tending to show a lack of intent. He claimed that the circumstances surrounding the firing of the gun, particularly the slamming of the door and the trajectory of the second bullet, supported the hypothesis of accident, and that his immediate confession to that effect buttressed the assertion. He also argued that his treatment of every other person encountered during the escape indicated a lack of disposition to use force.

On the dispositive issue of intent, the trial judge instructed the jury as follows:

> "A crime is a violation of a statute of this State in which there shall be a union of joint operation of act or omission to act, and intention or criminal negligence. A person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking or intention or criminal negligence. The acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted. A person will

---

[1] The malice murder statute at the time in question provided:
"A person commits murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being. . . . Malice shall be implied where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart." Ga. Code Ann. § 26–1101(a) (1978).

not be presumed to act with criminal intention but the trier of facts, that is, the Jury, may find criminal intention upon a consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is prosecuted." App. 8a–9a.

Approximately one hour after the jury had received the charge and retired for deliberation, it returned to the courtroom and requested reinstruction on the element of intent and the definition of accident. *Id.*, at 13a–14a. Upon receiving the requested reinstruction, the jury deliberated 10 more minutes and returned a verdict of guilty. The next day Franklin was sentenced to death for the murder conviction.

Franklin unsuccessfully appealed the conviction and sentence to the Georgia Supreme Court. *Franklin* v. *State*, 245 Ga. 141, 263 S. E. 2d 666, cert. denied, 447 U. S. 930 (1980). He then unsuccessfully sought state postconviction relief. See *Franklin* v. *Zant*, Habeas Corpus File No. 5025 (Super. Ct. Butts Cty., Ga., Sept. 10, 1981), cert. denied, 456 U. S. 938 (1982). Having exhausted state postconviction remedies, Franklin sought federal habeas corpus relief, pursuant to 28 U. S. C. § 2254, in the United States District Court for the Middle District of Georgia on May 14, 1982. That court denied the application without an evidentiary hearing. App. 16a.

Franklin appealed to the United States Court of Appeals for the Eleventh Circuit. The Court of Appeals reversed the District Court and ordered that the writ issue. 720 F. 2d 1206 (1983). The court held that the jury charge on the dispositive issue of intent could have been interpreted by a reasonable juror as a mandatory presumption that shifted to the defendant a burden of persuasion on the intent element of the offense. For this reason the court held that the jury charge ran afoul of fundamental Fourteenth Amendment due process guarantees as explicated in *Sandstrom* v. *Montana*, 442 U. S. 510 (1979). See 720 F. 2d, at 1208–1212. In denying

petitioner Francis' subsequent petition for rehearing, the panel elaborated its earlier holding to make clear that the effect of the presumption at issue had been considered in the context of the jury charge as a whole. See 723 F. 2d 770, 771–772 (1984) *(per curiam)*.

We granted certiorari. 467 U. S. 1225 (1984). We affirm.

## II

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U. S., at 364. This "bedrock, 'axiomatic and elementary' [constitutional] principle," *id.*, at 363, prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime. *Sandstrom* v. *Montana, supra*, at 520–524; *Patterson* v. *New York*, 432 U. S. 197, 210, 215 (1977); *Mullaney* v. *Wilbur*, 421 U. S. 684, 698–701 (1975); see also *Morissette* v. *United States*, 342 U. S. 246, 274–275 (1952). The prohibition protects the "fundamental value determination of our society," given voice in Justice Harlan's concurrence in *Winship*, that "it is far worse to convict an innocent man than to let a guilty man go free." 397 U. S., at 372. See *Speiser* v. *Randall*, 357 U. S. 513, 525–526 (1958). The question before the Court in this case is almost identical to that before the Court in *Sandstrom:* "whether the challenged jury instruction had the effect of relieving the State of the burden of proof enunciated in *Winship* on the critical question of . . . state of mind," 442 U. S., at 521, by creating a mandatory presumption of intent upon proof by the State of other elements of the offense.

The analysis is straightforward. "The threshold inquiry in ascertaining the constitutional analysis applicable to this kind of jury instruction is to determine the nature of the presump-

tion it describes." *Id.*, at 514. The court must determine whether the challenged portion of the instruction creates a mandatory presumption, see *id.*, at 520–524, or merely a permissive inference, see *Ulster County Court* v. *Allen*, 442 U. S. 140, 157–163 (1979). A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts.[2] A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion.

Mandatory presumptions must be measured against the standards of *Winship* as elucidated in *Sandstrom*. Such presumptions violate the Due Process Clause if they relieve the State of the burden of persuasion on an element of an offense. *Patterson* v. *New York*, *supra*, at 215 ("[A] State must prove every ingredient of an offense beyond a reasonable doubt and . . . may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense"). See also *Sandstrom*, *supra*, at 520–524; *Mullaney* v. *Wilbur*, *supra*, at 698–701.[3] A permissive inference does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved. Such inferences do not necessarily implicate the concerns of *Sandstrom*. A permissive inference violates the Due Process Clause only if the suggested

---

[2] A mandatory presumption may be either conclusive or rebuttable. A conclusive presumption removes the presumed element from the case once the State has proved the predicate facts giving rise to the presumption. A rebuttable presumption does not remove the presumed element from the case but nevertheless requires the jury to find the presumed element unless the defendant persuades the jury that such a finding is unwarranted. See *Sandstrom* v. *Montana*, 442 U. S. 510, 517–518 (1979).

[3] We are not required to decide in this case whether a mandatory presumption that shifts only a burden of production to the defendant is consistent with the Due Process Clause, and we express no opinion on that question.

conclusion is not one that reason and common sense justify in light of the proven facts before the jury. *Ulster County Court, supra,* at 157–163.

Analysis must focus initially on the specific language challenged, but the inquiry does not end there. If a specific portion of the jury charge, considered in isolation, could reasonably have been understood as creating a presumption that relieves the State of its burden of persuasion on an element of an offense, the potentially offending words must be considered in the context of the charge as a whole. Other instructions might explain the particular infirm language to the extent that a reasonable juror could not have considered the charge to have created an unconstitutional presumption. *Cupp* v. *Naughten,* 414 U. S. 141, 147 (1973). This analysis "requires careful attention to the words actually spoken to the jury . . . , for whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." *Sandstrom, supra,* at 514.

## A

Franklin levels his constitutional attack at the following two sentences in the jury charge: "The acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted." App. 8a–9a.[4] The Georgia Supreme Court has interpreted this language as creating no more than a permissive inference that comports with the constitutional standards of *Ulster County Court* v. *Allen, supra.* See *Skrine* v. *State,* 244 Ga. 520, 521, 260 S. E. 2d 900, 901 (1979). The question, however, is not what the State Supreme Court declares the meaning of the charge to be, but

---

[4] Intent to kill is an element of the offense of malice murder in Georgia. See *Patterson* v. *State,* 239 Ga. 409, 416–417, 238 S. E. 2d 2, 8 (1977).

rather what a reasonable juror could have understood the charge as meaning. *Sandstrom*, 442 U. S., at 516–517 (state court "is not the final authority on the interpretation which a jury could have given the instruction"). The federal constitutional question is whether a reasonable juror could have understood the two sentences as a mandatory presumption that shifted to the defendant the burden of persuasion on the element of intent once the State had proved the predicate acts.

The challenged sentences are cast in the language of command. They instruct the jury that "acts of a person of sound mind and discretion *are presumed* to be the product of the person's will," and that a person *"is presumed* to intend the natural and probable consequences of his acts," App. 8a–9a (emphasis added). These words carry precisely the message of the language condemned in *Sandstrom*, 442 U. S., at 515 ("'The law presumes that a person intends the ordinary consequences of his voluntary acts'"). The jurors "were not told that they had a choice, or that they *might* infer that conclusion; they were told only that the law presumed it. It is clear that a reasonable juror could easily have viewed such an instruction as mandatory." *Ibid.* (emphasis added). The portion of the jury charge challenged in this case directs the jury to presume an essential element of the offense—intent to kill—upon proof of other elements of the offense—the act of slaying another. In this way the instructions "undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to *find* the ultimate facts beyond a reasonable doubt." *Ulster County Court* v. *Allen, supra,* at 156 (emphasis added).

The language challenged here differs from *Sandstrom*, of course, in that the jury in this case was explicitly informed that the presumptions "may be rebutted." App. 8a–9a. The State makes much of this additional aspect of the instruction in seeking to differentiate the present case from *Sandstrom*. This distinction does not suffice, however, to cure the infirmity in the charge. Though the Court in *Sandstrom*

acknowledged that the instructions there challenged could have been reasonably understood as creating an irrebuttable presumption, 442 U. S., at 517, it was not on this basis alone that the instructions were invalidated. Had the jury reasonably understood the instructions as creating a mandatory *rebuttable* presumption the instructions would have been no less constitutionally infirm. *Id.*, at 520–524.

An irrebuttable or conclusive presumption relieves the State of its burden of persuasion by removing the presumed element from the case entirely if the State proves the predicate facts. A mandatory rebuttable presumption does not remove the presumed element from the case if the State proves the predicate facts, but it nonetheless relieves the State of the affirmative burden of persuasion on the presumed element by instructing the jury that it must find the presumed element unless the defendant persuades the jury not to make such a finding. A mandatory rebuttable presumption is perhaps less onerous from the defendant's perspective, but it is no less unconstitutional. Our cases make clear that "[s]uch shifting of the burden of persuasion with respect to a fact which the State deems so important that it must be either proved or presumed is impermissible under the Due Process Clause." *Patterson* v. *New York*, 432 U. S., at 215. In *Mullaney* v. *Wilbur* we explicitly held unconstitutional a mandatory rebuttable presumption that shifted to the defendant a burden of persuasion on the question of intent. 421 U. S., at 698–701. And in *Sandstrom* we similarly held that instructions that might reasonably have been understood by the jury as creating a mandatory rebuttable presumption were unconstitutional. 442 U. S., at 524.[5]

---

[5] JUSTICE REHNQUIST's suggestion in dissent that our holding with respect to the constitutionality of mandatory rebuttable presumptions "extends" prior law, *post*, at 332, is simply inaccurate. In *Sandstrom* v. *Montana* our holding rested on equally valid alternative rationales: "[T]he question before this Court is whether the challenged jury instruction had

When combined with the immediately preceding mandatory language, the instruction that the presumptions "may be rebutted" could reasonably be read as telling the jury that it was required to infer intent to kill as the natural and probable consequence of the act of firing the gun unless the defendant persuaded the jury that such an inference was unwarranted. The very statement that the presumption "may be rebutted" could have indicated to a reasonable juror that the defendant bore an affirmative burden of persuasion once the State proved the underlying act giving rise to the presumption. Standing alone, the challenged language undeniably created an unconstitutional burden-shifting presumption with respect to the element of intent.

## B

The jury, of course, did not hear only the two challenged sentences. The jury charge taken as a whole might have

---

the effect of relieving the State of the burden of proof enunciated in *Winship* on the critical question of petitioner's state of mind. We conclude that *under either of the two possible interpretations of the instruction set out above*, precisely that effect would result, and that the instruction therefore represents constitutional error." 442 U. S., at 521 (emphasis added). In any event, the principle that mandatory rebuttable presumptions violate due process had been definitively established prior to *Sandstrom.* In *Mullaney* v. *Wilbur*, it was a mandatory *rebuttable* presumption that we held unconstitutional. 421 U. S., at 698–701. As we explained in *Patterson* v. *New York:*

"*Mullaney* surely held that a State . . . may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense. . . . Such shifting of the burden of persuasion with respect to a fact which the State deems so important that it must be either proved or presumed is impermissible under the Due Process Clause." 432 U. S., at 215.

An *irrebuttable* presumption, of course, does not shift any burden to the defendant; it eliminates an element from the case if the State proves the requisite predicate facts. Thus the Court in *Patterson* could only have been referring to a mandatory *rebuttable* presumption when it stated that "such *shifting* of the burden of persuasion . . . is impermissible." *Ibid.* (emphasis added).

explained the proper allocation of burdens with sufficient clarity that any ambiguity in the particular language challenged could not have been understood by a reasonable juror as shifting the burden of persuasion. See *Cupp* v. *Naughten*, 414 U. S. 141 (1973). The State argues that sufficient clarifying language exists in this case. In particular, the State relies on an earlier portion of the charge instructing the jurors that the defendant was presumed innocent and that the State was required to prove every element of the offense beyond a reasonable doubt.[6] The State also points to the sentence immediately following the challenged portion of the charge, which reads: "[a] person will not be presumed to act with criminal intention . . . ." App. 9a.

As we explained in *Sandstrom*, general instructions on the State's burden of persuasion and the defendant's presumption of innocence are not "rhetorically inconsistent with a conclusive or burden-shifting presumption," because "[t]he jury could have interpreted the two sets of instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to intent could be satisfied." 442 U. S., at 518–519, n. 7. In light of the instructions on intent given in this case, a reasonable juror could thus have thought that, although intent must be proved beyond a reasonable doubt, proof of the firing of the gun and its ordinary consequences constituted proof of intent beyond a reasonable doubt unless the defendant persuaded the jury otherwise. Cf. *Mullaney* v. *Wilbur*, 421 U. S., at 703, n. 31. These

---

[6] These portions of the instructions read:

"I charge you that before the State is entitled to a verdict of conviction of this defendant at your hands . . . the burden is upon the State of proving the defendant's guilt as charged . . . beyond a reasonable doubt." App. 4a.

"Now . . . the defendant enters upon his trial with the presumption of innocence in his favor and this presumption . . . remains with him throughout the trial, unless it is overcome by evidence sufficiently strong to satisfy you of his guilt . . . beyond a reasonable doubt." *Id.*, at 5a.

general instructions as to the prosecution's burden and the defendant's presumption of innocence do not dissipate the error in the challenged portion of the instructions.

Nor does the more specific instruction following the challenged sentences—"A person will not be presumed to act with criminal intention but the trier of facts, that is, the Jury, may find criminal intention upon a consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is prosecuted," App. 9a—provide a sufficient corrective. It may well be that this *"criminal* intention" instruction was not directed to the element of intent at all, but to another element of the Georgia crime of malice murder. The statutory definition of capital murder in Georgia requires malice aforethought. Ga. Code Ann. § 16–5–1(1984) (formerly Ga. Code Ann. § 26–1101(a)(1978)). Under state law malice aforethought comprises two elements: intent to kill and the absence of provocation or justification. See *Patterson* v. *State*, 239 Ga. 409, 416–417, 238 S. E. 2d 2, 8 (1977); *Lamb* v. *Jernigan*, 683 F. 2d 1332, 1337 (CA11 1982) (interpreting Ga. Code Ann. § 16–5–1), cert. denied, 460 U. S. 1024 (1983). At another point in the charge in this case, the trial court, consistently with this understanding of Georgia law, instructed the jury that malice is "the unlawful, deliberate intention to kill a human being without justification or mitigation or excuse." App. 10a.

The statement *"criminal* intention may not be presumed" may well have been intended to instruct the jurors that they were not permitted to presume the absence of provocation or justification but that they could infer this conclusion from circumstantial evidence. Whatever the court's motivation in giving the instruction, the jury could certainly have understood it this way. A reasonable juror trying to make sense of the juxtaposition of an instruction that "a person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts," *id.*, at 8a–9a, and an

instruction that "[a] person will not be presumed to act with criminal intention," *id.*, at 9a, may well have thought that the instructions related to different elements of the crime and were therefore not contradictory—that he could presume intent to kill but not the absence of justification or provocation.[7]

---

[7] Because the jurors heard the divergent intent instructions before they heard the instructions about absence of justification, JUSTICE REHNQUIST's dissent argues that no reasonable juror could have understood the criminal intent instruction as referring to the absence of justification. The dissent reproves the Court for reading the instructions "as a 'looking-glass charge' which, when held to a mirror, reads more clearly in the opposite direction." *Post*, at 340. A reasonable juror, however, would have sought to make sense of the conflicting intent instructions not only at the initial moment of hearing them but also later in the jury room after having heard the entire charge. One would expect most of the juror's reflection about the meaning of the instructions to occur during this subsequent deliberative stage of the process. Under these circumstances, it is certainly reasonable to expect a juror to attempt to make sense of a confusing earlier portion of the instruction by reference to a later portion of the instruction. The dissent obviously accepts this proposition because much of the language the dissent marshals to argue that the jury would not have misunderstood the intent instruction appears several paragraphs after the conflicting sentences about intent. Indeed much of this purportedly clarifying language appears *after* the portion of the charge concerning the element of absence of justification. See *post*, at 336 (REHNQUIST, J., dissenting), quoting App. 10a.

It is puzzling that the dissent thinks it "defies belief" to suggest that a reasonable juror would have related the contradictory intent instructions to the later instructions about the element of malice. *Post*, at 339. As the portion of the charge quoted in the dissent makes clear, the later malice instructions specifically spoke of intent: "Malice . . . is the unlawful, deliberate intention to kill a human being without justification or mitigation or excuse, which intention must exist at the time of the killing." App. 10a. See *post*, at 336 (REHNQUIST, J., dissenting). A reasonable juror might well have sought to understand this language by reference to the earlier instruction referring to criminal intent.

Finally, the dissent's representation of the language in this part of the charge as a clarifying "express statemen[t] . . . that there was no burden on the defendant to disprove malice," *post*, at 340, is misleading. The rele-

Even if a reasonable juror could have understood the prohibition of presuming "criminal intention" as applying to the element of intent, that instruction did no more than contradict the instruction in the immediately preceding sentence. A reasonable juror could easily have resolved the contradiction in the instruction by choosing to abide by the mandatory presumption and ignore the prohibition of presumption. Nothing in these specific sentences or in the charge as a whole makes clear to the jury that one of these contradictory instructions carries more weight than the other. Language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity. A reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict.[8] Had the instruc-

---

vant portion of the charge reads: "it is not required of the accused to prove an absence of malice, if the evidence for the State shows facts which may excuse or justify the homicide." App. 10a. This language is most naturally read as implying that if the State's evidence *does not* show mitigating facts the defendant *does* have the burden to prove absence of malice. Thus, if anything, this portion of the charge exacerbates the potential for an unconstitutional shifting of the burden to the defendant.

[8] JUSTICE REHNQUIST's dissent would hold a jury instruction invalid only when "it must at least be *likely*" that a reasonable juror would have understood the charge unconstitutionally to shift a burden of persuasion. *Post*, at 342. Apparently this "at least likely" test would not be met even when there exists a reasonable possibility that a juror would have understood the instructions unconstitutionally, so long as the instructions admitted of a "more 'reasonable'" constitutional interpretation. *Post*, at 340–341. Apart from suggesting that application of the "at least likely" standard would lead to the opposite result in the present case, the dissent leaves its proposed alternative distressingly undefined. Even when faced with clearly contradictory instructions respecting allocation of the burden of persuasion on a crucial element of an offense, a reviewing court apparently would be required to intuit, based on its sense of the "tone" of the jury instructions as a whole, see *ibid.*, whether a reasonable juror was more likely to have reached a constitutional understanding of the instructions than an unconstitutional understanding of the instructions.

This proposed alternative standard provides no sound basis for appellate review of jury instructions. Its malleability will certainly generate in-

tion "[a] person . . . is presumed to intend the natural and probable consequences of his acts," App. 8a–9a, been followed by the instruction *"this means that* a person will not be presumed to act with criminal intention but the jury may find criminal intention upon consideration of all circumstances connected with the act for which the accused is prosecuted," a somewhat stronger argument might be made that a reasonable juror could not have understood the challenged language as shifting the burden of persuasion to the defendant. Cf. *Sandstrom*, 442 U. S., at 517 ("[G]iven the lack of qualifying instructions as to the legal effect of the presumption, we can-

---

consistent appellate results and thereby compound the confusion that has plagued this area of the law. Perhaps more importantly, the suggested approach provides no incentive for trial courts to weed out potentially infirm language from jury instructions; in every case, the "presumption of innocence" boilerplate in the instructions will supply a basis from which to argue that the "tone" of the charge as a whole is not unconstitutional. For these reasons, the proposed standard promises reviewing courts, including this Court, an unending stream of cases in which ad hoc decisions will have to be made about the "tone" of jury instructions as a whole.

Most importantly, the dissent's proposed standard is irreconcilable with bedrock due process principles. The Court today holds that contradictory instructions as to intent—one of which imparts to the jury an unconstitutional understanding of the allocation of burdens of persuasion—create a reasonable likelihood that a juror understood the instructions in an unconstitutional manner, unless other language in the charge *explains* the infirm language sufficiently to eliminate this possibility. If such a reasonable possibility of an unconstitutional understanding exists, "we have no way of knowing that [the defendant] was not convicted on the basis of the unconstitutional instruction." *Sandstrom*, 442 U. S., at 526. For this reason, it has been settled law since *Stromberg* v. *California*, 283 U. S. 359 (1931), that when there exists a reasonable possibility that the jury relied on an unconstitutional understanding of the law in reaching a guilty verdict, that verdict must be set aside. See *Leary* v. *United States*, 395 U. S. 6, 31–32 (1969); *Bachellar* v. *Maryland*, 397 U. S. 564, 571 (1970). The dissent's proposed alternative cannot be squared with this principle; notwithstanding a substantial doubt as to whether the jury decided that the State proved intent beyond a reasonable doubt, the dissent would uphold this conviction based on an impressionistic and intuitive judgment that it was *more* likely that the jury understood the charge in a constitutional manner than in an unconstitutional manner.

not discount the possibility that the jury may have interpreted the instruction" in an unconstitutional manner).  See also *Corn* v. *Zant,* 708 F. 2d 549, 559 (CA11 1983), cert. denied, 467 U. S. 1220 (1984).  Whether or not such explanatory language might have been sufficient, however, no such language is present in this jury charge.  If a juror thought the "criminal intention" instruction pertained to the element of intent, the juror was left in a quandary as to whether to follow that instruction or the immediately preceding one it contradicted.[9]

---

[9] Rejecting this conclusion, JUSTICE REHNQUIST's dissent "simply do[es] not believe" that a reasonable juror would have paid sufficiently close attention to the particular language of the jury instructions to have been perplexed by the contradictory intent instructions.  See *post,* at 340.  See also *Sandstrom* v. *Montana, supra,* at 528 (REHNQUIST, J., concurring) ("I continue to have doubts as to whether this particular jury was so attentively attuned to the instructions of the trial court that it divined the difference recognized by lawyers between 'infer' and 'presume'").  Apparently the dissent would have the degree of attention a juror is presumed to pay to particular jury instructions vary with whether a presumption of attentiveness would help or harm the criminal defendant.  See, *e. g., Parker* v. *Randolph,* 442 U. S. 62, 73 (1979) (opinion of REHNQUIST, J.) ("A crucial assumption underlying that system [of trial by jury] is that juries will follow the instructions given them by the trial judge.  Were this not so, it would be pointless for a trial court to instruct a jury, and even more pointless for an appellate court to reverse a criminal conviction because the jury was improperly instructed. . . . [A]n instruction directing the jury to consider a codefendant's extrajudicial statement only against its source has been found sufficient to avoid offending the confrontation right of the implicated defendant"); see also *id.,* at 75, n. 7 ("The 'rule'—indeed, the premise upon which the system of jury trials functions under the American judicial system—is that juries can be trusted to follow the trial court's instructions").  Cf. *Wainwright* v. *Witt,* 469 U. S. 412 (1985).

The Court presumes that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them.  Cases may arise in which the risk of prejudice inhering in material put before the jury may be so great that even a limit-

Because a reasonable juror could have understood the challenged portions of the jury instruction in this case as creating a mandatory presumption that shifted to the defendant the burden of persuasion on the crucial element of intent, and because the charge read as a whole does not explain or cure the error, we hold that the jury charge does not comport with the requirements of the Due Process Clause.

## III

Petitioner argues that even if the jury charge fails under *Sandstrom* this Court should overturn the Court of Appeals because the constitutional infirmity in the charge was harmless error on this record. This Court has not resolved whether an erroneous charge that shifts a burden of persuasion to the defendant on an essential element of an offense can ever be harmless. See *Connecticut* v. *Johnson*, 460 U. S. 73 (1983). We need not resolve the question in this case. The Court of Appeals conducted a careful harmless-error inquiry and concluded that the *Sandstrom* error at trial could not be deemed harmless. 720 F. 2d, at 1212. The court noted:

> "[Franklin's] only defense was that he did not have the requisite intent to kill. The facts did not overwhelmingly preclude that defense. The coincidence of the first

___

ing instruction will not adequately protect a criminal defendant's constitutional rights. *E. g., Bruton* v. *United States*, 391 U. S. 123 (1968); *Jackson* v. *Denno*, 378 U. S. 368 (1964). Absent such extraordinary situations, however, we adhere to the crucial assumption underlying our constitutional system of trial by jury that jurors carefully follow instructions. As Chief Justice Traynor has said: "[W]e must assume that juries for the most part understand and faithfully follow instructions. The concept of a fair trial encompasses a decision by a tribunal that has understood and applied the law to all material issues in the case." R. Traynor, The Riddle of Harmless Error 73–74 (1970) (footnote omitted), quoted in *Connecticut* v. *Johnson*, 460 U. S. 73, 85, n. 14 (1983) (opinion of BLACKMUN, J.).

> shot with the slamming of the door, the second shot's failure to hit anyone, or take a path on which it would have hit anyone, and the lack of injury to anyone else all supported the lack of intent defense. A presumption that Franklin intended to kill completely eliminated his defense of 'no intent.' Because intent was plainly at issue in this case, and was not overwhelmingly proved by the evidence . . . we cannot find the error to be harmless." *Ibid.*

Even under the harmless-error standard proposed by the dissenting Justices in *Connecticut* v. *Johnson, supra,* at 97, n. 5 (evidence "so dispositive of intent that a reviewing court can say beyond a reasonable doubt that the jury would have found it unnecessary to rely on the presumption") (POWELL, J., joined by BURGER, C. J., and REHNQUIST and O'CONNOR, JJ., dissenting), this analysis by the Court of Appeals is surely correct.[10] The jury's request for reinstruction on the elements of malice and accident, App. 13a–14a, lends further substance to the court's conclusion that the evidence of intent was far from overwhelming in this case. We therefore affirm the Court of Appeals on the harmless-error question as well.

### IV

*Sandstrom* v. *Montana* made clear that the Due Process Clause of the Fourteenth Amendment prohibits the State from making use of jury instructions that have the effect of relieving the State of the burden of proof enunciated in *Winship* on the critical question of intent in a criminal prosecution. 442 U. S., at 521. Today we reaffirm the rule of *Sandstrom* and the wellspring due process principle from which it was drawn. The Court of Appeals faithfully

---

[10] The primary task of this Court upon review of a harmless-error determination by the court of appeals is to ensure that the court undertook a thorough inquiry and made clear the basis of its decision. See *Connecticut* v. *Johnson, supra,* at 102 (POWELL, J., dissenting) (harmless error "is a question more appropriately left to the courts below").

and correctly applied this rule, and the court's judgment is therefore

*Affirmed.*

JUSTICE POWELL, dissenting.

In *Sandstrom* v. *Montana,* 442 U. S. 510 (1979), we held that instructing the jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts" violates due process. We invalidated this instruction because a reasonable juror could interpret it either as "an irrebuttable direction by the court to find intent once convinced of the facts triggering the presumption" or "as a direction to find intent upon proof of the defendant's voluntary actions . . . unless *the defendant* proved the contrary by some quantum of proof which may well have been considerably greater than 'some' evidence—thus effectively shifting the burden of persuasion on the element of intent." *Id.,* at 517 (original emphasis). Either interpretation, we held, would have relieved the State of its burden of proving every element of the crime beyond a reasonable doubt. See *id.,* at 521; *Mullaney* v. *Wilbur,* 421 U. S. 684, 698–701 (1975).

Unlike the charge in *Sandstrom,* the charge in the present case is not susceptible of either interpretation. It creates no "irrebuttable direction," and a reasonable juror could not conclude that it relieves the State of its burden of persuasion. The Court, however, believes that two sentences make the charge infirm:

> "The acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted." App. 8a–9a.

I agree with the Court that *"[s]tanding alone,"* the challenged language could be viewed as "an unconstitutional burden-shifting presumption with respect to the element of

intent." *Ante,* at 318 (emphasis added). The fact is, however, that this language did *not* stand alone. It is but a small part of a lengthy charge, other parts of which clarify its meaning. Although the Court states that it considered the effect the rest of the charge would have had on a reasonable juror, its analysis overlooks or misinterprets several critical instructions. These instructions, I believe, would have prevented a reasonable juror from imposing on the defendant the burden of persuasion on intent. When viewed as a whole, see *Cupp* v. *Naughten,* 414 U. S. 141, 146–147 (1973), the jury charge satisfies the requirements of due process.

The trial court repeatedly impressed upon the jury both that the defendant should be presumed innocent until proved guilty and that the State bore the burden of proving guilt beyond a reasonable doubt. It stated:

> "[T]he burden is upon the State of proving the defendant's guilt as charged in such count beyond a reasonable doubt. . . .
>
> ". . . If, upon a consideration of all the facts and circumstances of this case, your mind is wavering, unsettled, not satisfied, then that is the reasonable doubt under the law and if such a doubt rests upon your mind, it is your duty to give the defendant the benefit of that doubt and acquit him.
>
> "Now, the defendant enters upon his trial with the presumption of innocence in his favor and this presumption . . . remains with him throughout the trial, unless and until it is overcome by evidence sufficiently strong to satisfy you of his guilt to a reasonable and moral certainty and beyond a reasonable doubt.
>
> .     .     .     .     .
>
> "Now, Ladies and Gentlemen, the burden is upon the State to prove to a reasonable and moral certainty and beyond a reasonable doubt every material allegation in each count of this indictment and I charge you further,

that there is no burden on the defendant to prove anything. The burden is on the State.

.      .      .      .      .

"Members of the Jury, if, from a consideration of the evidence or from a lack of evidence, you are not satisfied beyond a reasonable doubt and to a reasonable and moral certainty that the State has established the guilt of the defendant . . . then it would be your duty to acquit him . . . ." App. 4a–12a.

We noted in *Sandstrom, supra,* at 518, n. 7, that general instructions may be insufficient by themselves to make clear that the burden of persuasion remains with the State. In this case, however, the trial court went well beyond the typical generality of such instructions. It repeatedly reiterated the presumption of innocence and the heavy burden imposed upon the State. In addition, the jury was told that the "presumption of innocence . . . remains with [the defendant] throughout the trial," App. 5a, and that "there is no burden on the defendant to prove anything. The burden is on the State," *id.,* at 8a.

More important is the immediate context of the two suspect sentences. They appeared in a paragraph that stated:

"A crime is a violation of a statute of this State in which there shall be a union of joint operation of act or omission to act, and intention or criminal negligence. A person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking or intention or criminal negligence. The acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted. *A person will not be presumed to act with criminal intention*

*but the trier of facts, that is, the Jury, may find criminal intention upon a consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is prosecuted."* *Id.,* at 8a–9a (emphasis added).

The final sentence clearly tells the jury that it cannot place on the defendant the burden of persuasion on intent. The Court, however, holds that in context it could not have had this effect. It believes that the term "criminal intention" refers not to intent at all, but to "absence of provocation or justification," *ante,* at 320, a separate element of malice murder. Despite the fact that provocation and justification are largely unrelated to intent, the Court believes that "the jury could certainly have understood [the term] this way." *Ibid.* Such a strained interpretation is neither logical nor justified.*

The instructions on circumstantial evidence further ensured that no reasonable juror would have switched the burden of proof on intent. Three times the trial court told the jury that it could not base a finding of any element of the offense on circumstantial evidence unless the evidence "exclude[d] every other reasonable hypothesis, save that of the [accused's] guilt . . . ." App. 6a. Under these instructions, a reasonable juror could not have found intent unless the State's evidence excluded any reasonable hypothesis that the defendant had acted unintentionally. This requirement

---

*The term's context also precludes such an interpretation. The term "criminal intention" appears in a paragraph describing the general requirements of all crimes without discussing the specific requirements of any particular one. The Court offers no reason why a reasonable juror might have believed that this paragraph referred to only one of the crimes charged—malice murder—especially when a different crime—kidnaping— was described in the immediately following paragraphs. It is much more reasonable to interpret the term "criminal intention" as shorthand for "intention or criminal negligence," the traditional *mens rea* requirement. In this view, the final sentence informs the jury that whatever else a rebuttable presumption might establish it cannot by itself establish *mens rea.*

placed a burden of *excluding* the possibility of lack of intent on the State and would have made it impossible to impose on the defendant the burden of persuasion on intent itself.

Together, I believe that the instructions on reasonable doubt and the presumption of innocence, the instruction that "criminal intention" cannot be presumed, and the instructions governing the interpretation of circumstantial evidence removed any danger that a reasonable juror could have believed that the two suspect sentences placed on the defendant the burden of persuasion on intent. When viewed as a whole, the jury instructions did not violate due process. I accordingly dissent.

JUSTICE REHNQUIST, with whom THE CHIEF JUSTICE and JUSTICE O'CONNOR join, dissenting.

In *In re Winship*, 397 U. S. 358 (1970), the trial judge in a bench trial held that although the State's proof was sufficient to warrant a finding of guilt by a preponderance of the evidence, it was not sufficient to warrant such a finding beyond a reasonable doubt. The outcome of the case turned on which burden of proof was to be imposed on the prosecution. This Court held that the Constitution requires proof beyond a reasonable doubt in a criminal case, and Winship's adjudication was set aside.

Today the Court sets aside Franklin's murder conviction, but not because either the trial judge or the trial jury found that his guilt had not been proved beyond a reasonable doubt. The conviction is set aside because this Court concludes that one or two sentences out of several pages of instructions given by the judge to the jury could be read as allowing the jury to return a guilty verdict in the absence of proof establishing every statutory element of the crime beyond a reasonable doubt. The Court reaches this result even though the judge admonished the jury at least four separate times that they could convict only if they found guilt beyond a reasonable doubt. The Court, instead of examining the charge to the jury as a whole, seems bent on piling syllogism on

syllogism to prove that someone *might* understand a few sentences in the charge to allow conviction on less than proof beyond a reasonable doubt. Such fine parsing of the jury instructions given in a state-court trial is not required by anything in the United States Constitution.

Today's decision needlessly extends our holding in *Sandstrom* v. *Montana,* 442 U. S. 510 (1979), to cases where the jury was not required to presume conclusively an element of a crime under state law. But even assuming the one or two sentences singled out by the Court might conceivably mislead, I do not believe that a reasonable person reading that language "in the context of the overall charge," see *Cupp* v. *Naughten,* 414 U. S. 141, 147 (1973), could possibly arrive at the Court's conclusion that constitutional error occurred here. I disagree with the Court's legal standard, which finds constitutional error where a reasonable juror *could* have understood the charge in a particular manner. But even on the facts, the Court's approach to the charge is more like that of a zealous lawyer bent on attaining a particular result than that of the "reasonable juror" referred to in *Sandstrom.*

In *Sandstrom* the jury was charged that "[t]he *law presumes* that a person intends the ordinary consequences of his voluntary acts." 442 U. S., at 515 (emphasis supplied). As in this case, intent was an element of the crime charged in *Sandstrom,* and the Court was of the opinion that given the mandatory nature of the above charge it was quite possible that the jury "once having found [Sandstrom's] act voluntary, would interpret the instruction as automatically directing a finding of intent." *Id.,* at 515–516. Such a presumption would have relieved the State entirely of the burden it had undertaken to prove that Sandstrom had killed intentionally—*i. e.,* "purposely or knowingly"—and would have mandated a finding of that intent regardless of whether other evidence in the case indicated to the contrary. *Id.,* at 520.

The *Sandstrom* Court went on, however, to discuss the constitutionality of a presumption that "did not conclusively

establish intent but rather could be rebutted." *Id.*, at 515. The Court opined that such a presumption would be unconstitutional because it could be understood as shifting the burden to the defendant to prove that he lacked the intent to kill. *Id.*, at 524 (citing *Mullaney* v. *Wilbur*, 421 U. S. 684 (1975)). In addition, the Court in a footnote stated that such a burden-shifting "mandatory rebuttable presumption" could not be cured by other language in the charge indicating that the State bore the burden of proving guilt beyond a reasonable doubt, because "the jury could have interpreted the . . . instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to intent could be satisfied." 422 U. S., at 519, n. 7.

It should be clear that the instructions at issue here—which provide that the challenged presumptions "may be rebutted"—are very different from the conclusive language at issue in *Sandstrom.* The conclusive presumption eliminates an element of the crime altogether; the rebuttable presumption here indicates that the particular element is still relevant, and may be shown not to exist. Nevertheless, the Court relies on the latter portion of the *Sandstrom* opinion, outlined above, as the precedent dictating its result. *Ante,* at 316–317, 319. The language relied upon is, of course, manifestly dicta, inasmuch as the *Sandstrom* Court had already held (1) that a mandatory conclusive presumption on intent is unconstitutional and (2) that a reasonable juror could have understood the instruction at issue as creating such a conclusive presumption.

Even if one accepts the *Sandstrom* dicta at face value, however, I do *not* agree with the Court that a "reasonable juror" listening to the charge "as a whole" could have understood the instructions as shifting the burden of disproving intent to the defendant. Before examining the convoluted reasoning that leads to the Court's conclusion, it will be useful to set out the relevant portions of the charge as the jury heard them, and not in scattered pieces as they are found in

the Court's opinion. The trial court began by explaining the general presumption of innocence:

"I charge you that before the State is entitled to a verdict of conviction . . . the burden is upon the State of proving the defendant's guilt as charged in such count beyond a reasonable doubt. . . .

"Now, reasonable doubt is just what that term implies. It's a doubt based on reason. . . . [A] reasonable doubt is the doubt of a fair-minded, impartial juror actively seeking for the truth and it may arise from a consideration of the evidence, from a conflict in the evidence or from a lack of evidence. If, upon a consideration of all the facts and circumstances of this case, your mind is wavering, unsettled, not satisfied, then that is the reasonable doubt under the law and if such a doubt rests upon your mind, it is your duty to give the defendant the benefit of that doubt and acquit him. If, on the other hand, no such doubt rests upon your mind, it would be equally your duty to return a verdict of guilty.

"Now, the defendant enters upon his trial with the presumption of innocence in his favor and this presumption, while not evidence, is yet in the nature of evidence and it remains with him throughout the trial, unless and until it is overcome by evidence sufficiently strong to satisfy you of his guilt to a reasonable and moral certainty and beyond a reasonable doubt."

The court stated the burden of proof once more in its general instructions concerning evaluation of witness credibility, and then stated it again before it turned to more specific instructions:

"Now, Ladies and Gentlemen, the burden is upon the State to prove to a reasonable and moral certainty and beyond a reasonable doubt every material allegation in each count of this indictment and I charge you further,

*that there is no burden on the defendant to prove anything. The burden is on the State.*

"Now I give you in charge, certain definitions as found in the Criminal Code of the State of Georgia.

"A crime is a violation of a statute of this State in which there shall be a union of joint operation of act or omission to act, and intention or criminal negligence. A person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking or intention or criminal negligence. *The acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted. A person will not be presumed to act with criminal intention but the trier of facts, that is, the Jury, may find criminal intention upon a consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is prosecuted.*" (Emphasis supplied.)

After instructing the jury on the specific elements of Count I, charging respondent with the kidnaping of the nurse, the Court went on to instruct on the elements of murder:

"I charge you that the law of Georgia defines murder as follows: A person commits murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being. Express malice is that deliberate intention unlawfully to take away the life of a fellow creature which is manifested by external circumstances capable of proof. Malice shall be implied where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart.

"Now, you will see that malice is an essential ingredient in murder as charged in this indictment in Count II, and it must exist before the alleged homicide can be murder. *Malice in its legal sense is not necessarily ill will or hatred; it is the unlawful, deliberate intention to kill a human being without justification or mitigation or excuse, which intention must exist at the time of the killing.* . . .

"Members of the Jury, *I charge you that it is not encumbent upon the accused to prove an absence of malice, if the evidence for the prosecution shows facts which may excuse or justify the homicide. The accused is not required to produce evidence of mitigation, justification or excuse on his part to the crime of murder. Whether mitigation, justification or excuse is shown by the evidence on the part of the State, it is not required of the accused to prove an absence of malice, if the evidence for the State shows facts which may excuse or justify the homicide.* But it is for you, the members of the Jury to say after a consideration of all the facts and circumstances in the case, whether or not malice, express or implied, exists in the case." (Emphasis supplied.)

In *Cupp* v. *Naughten,* 414 U. S. 141 (1973), we dealt with a constitutional challenge to an instruction that "every witness is presumed to speak the truth," in the context of a criminal trial where the defense presented no witnesses. We there reaffirmed "the well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Id.,* at 146–147 (citing *Boyd* v. *United States,* 271 U. S. 104, 107 (1926)). We noted that if a particular instruction was erroneous a reviewing court still must ask "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." 414 U. S., at 147. In reaching our conclusion that the instruction at issue in *Cupp* did not violate due process, we noted that the jury had

been fully informed of the State's burden to prove guilt beyond a reasonable doubt. We also pointed out that the instruction concerning the presumption of truthfulness had been accompanied by an instruction that in assessing a witness' credibility the jury should be attentive to the witness' own manner and words. We concluded that these instructions sufficiently allowed the jury to exercise its own judgment on the question of a witness' truthfulness; we also found no undue pressure on the defendant to take the stand and rebut the State's testimony, since the instruction indicated that such rebuttal could be founded on the State's own evidence. *Id.*, at 149.

I see no meaningful distinction between *Cupp* and the case at bar. Here the jury was instructed no less than four times that the State bore the burden of proof beyond a reasonable doubt. This language was accompanied early in the charge by a detailed discussion indicating that the jurors were the judges of their own reasonable doubt, that this doubt could arise after taking into account all the circumstances surrounding the incident at issue, and that where such doubt existed it was the jurors' duty to acquit. Four sentences prior to the offending language identified by the Court the jury was explicitly charged that "there is no burden on the defendant to prove anything." Immediately following that language the jury was charged that a person "will not be presumed to act with criminal intention," but that the jury could find such intention based upon the circumstances surrounding the act. The jury was then charged on Georgia's definition of malice, an essential element of murder which includes (1) deliberate intent to kill (2) without justification or mitigation or excuse. Again, the jury was explicitly charged that "it is not incumbent upon the accused to prove an absence of malice, if the evidence for the prosecution shows facts which may excuse or justify the homicide."

The Court nevertheless concludes, upon reading the charge in its entirety, that a "reasonable juror" could have

understood the instruction to mean (1) that the State had satisfied its burden of proving intent to kill by introducing evidence of the defendant's acts—drawing, aiming, and firing the gun—the "natural and probable consequences" of which were the death in question; (2) that upon proof of these acts the burden shifted to the defendant to disprove that he had acted with intent to kill; and (3) that if the defendant introduced no evidence or the jury was unconvinced by his evidence, the jury was *required* to find that the State had proved intent to kill even if the State's proof did not convince them of the defendant's intent.

The reasoning which leads to this conclusion would appeal only to a lawyer, and it is indeed difficult to believe that "reasonable jurors" would have arrived at it on their own.  It runs like this.  First, the Court states that a "reasonable juror" could understand the particular offending sentences, considered in isolation, to shift the burden to the defendant of disproving his intent to kill.  *Ante,* at 318.  The Court then proceeds to examine other portions of the charge, to determine whether they militate against this understanding.  It casually dismisses the "general instructions on the State's burden of persuasion," relying on the *Sandstrom* footnote which stated that the burden-shifting instruction could be read consistently with the State's general burden because "[t]he jury could have interpreted the two sets of instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to intent could be satisfied."  *Ante,* at 319.

Pausing here for a moment, I note that I am not at all sure that this expository fast footwork is as applicable where, unlike in *Sandstrom,* the presumption created by the charge is not conclusive, but rebuttable.  Since in this case the presumption was "rebuttable," the obvious question is: "rebuttable by what?"  The Court's analysis must assume that a "reasonable juror" understood the presumption to be a means

for satisfying the State's burden unless rebutted *by the defendant.* The italicized words, of course, are not included in the charge in this case, but if the jurors reasonably believed that the presumption could be rebutted by other means—for example, by the circumstances surrounding the incident—then the Court's analysis fails. But I find the Court's assumption unrealistic in any event, because if the jurors understood the charge as the Court posits then that conclusion was reached in the face of the contradictory preceding statement that *the defendant had no burden to prove anything.*

Undaunted, the Court does not even mention the italicized portion of the charge. Instead, it proceeds to dispose of the sentence immediately following the challenged sentences, which states that a person will *not* be presumed to act with *"criminal intent."* With respect to this language, the Court first speculates that it might have been directed, not to the "intent" element of malice, but rather to the element of malice which requires that the defendant act without justification or excuse. Thus, the Court explains that its "reasonable juror" could have reconciled the two apparently conflicting sentences by deciding "that the instructions related to different elements of the crime and were therefore not contradictory—that he could presume intent to kill but not the absence of justification or provocation." *Ante,* at 321.

This statement defies belief. Passing the obvious problem that both sentences speak to the defendant's "intent," and not to "justification or provocation," the Court has presumed that the jurors hearing this charge reconciled two apparently contradictory sentences by neatly attributing them to separate elements of Georgia's definition of "malice"—no small feat for laymen—and did so *even though they had not yet been charged on the element of malice.* Either the Court is attributing qualities to the average juror that are found in very few lawyers, or it perversely reads the instructions as a

"looking-glass charge" which, when held to a mirror, reads more clearly in the opposite direction.\*

Alternatively, the Court suggests that the sentences dealing with the presumptions on intent are flatly contradictory, and that the charge therefore is defective since there is no way to determine which instruction a reasonable juror would have followed. The Court reasoned in this regard:

> "Nothing in these specific sentences or in the charge as a whole makes clear to the jury that one of these contradictory instructions carries more weight than the other. Language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity." *Ante*, at 322.

It may well be that the Court's technical analysis of the charge holds together from a legal standpoint, but its tortured reasoning is alone sufficient to convince me that no "reasonable juror" followed that path. It is not that I think jurors are not conscientious, or that I believe jurors disregard troublesome trial court instructions; I agree with the Court that we generally must assume that jurors strive to follow the law as charged. See *ante*, at 324–325, n. 9. Rather, I simply do not believe that a "reasonable juror," upon listening to the above charge, could have interpreted it as shifting the burden to the defendant to disprove intent, and as requiring the juror to follow the presumption *even if he was not satisfied with the State's proof on that element.*

To reach this conclusion the juror would have had to disregard three express statements—that the defendant had no burden to prove anything, that "criminal intent" was not to be presumed, and that there was no burden on the defendant to disprove malice. In addition, he would have had to do so under circumstances where a far more "reasonable" interpre-

---

\*"[Alice] puzzled over this for some time, but at last a bright thought struck her. 'Why, it's a Looking-glass book, of course! And, if I hold it up to a glass, the words will all go the right way again.'" L. Carroll, Through the Looking-Glass 19–20 (1950).

tation was available. The challenged language stated that the presumption could be rebutted. Throughout the charge the jury was told that they were to listen to all the evidence and draw their own conclusions, based upon a witness' demeanor and words and their own common sense. They were told that the burden of proof rested on the State, and they were told that circumstances surrounding the acts in question would provide a basis for drawing various conclusions with respect to intent and malice. The reasonable interpretation of the challenged charge is that, just as in *Cupp*, the presumption could be rebutted by the circumstances surrounding the acts, whether presented by the State or the defendant. Such an interpretation would not require a juror to disregard any possibly conflicting instructions; it also would have been consistent with the entire tone of the charge from start to finish. See *McInerney* v. *Berman*, 621 F. 2d 20, 24 (CA1 1980) ("[I]t will be presumed that [a juror] will not isolate a particular portion of the charge and ascribe to it more importance than the rest").

Perhaps more importantly, however, the Court's reasoning set out above indicates quite clearly that where a particular isolated instruction can be read as burden-shifting the Court is not disposed to find that instruction constitutionally harmless in the absence of specific language elsewhere in the charge which addresses and cures that instruction. See also *ante*, at 322–323, n. 8. This reasoning cannot be squared with *Cupp*, in which this Court emphasized that "the question is not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." 414 U. S., at 147. It is true that the problems raised here probably could be alleviated if the words "is presumed" were merely changed to "may be presumed," thereby making the presumption permissive, see *ante*, at 316; *Lamb* v. *Jernigan*, 683 F. 2d 1332, 1339–1340 (CA11 1982); *McInerney, supra*, at 24, and admittedly the Court's analysis of the charge establishes a

rule that is easier in application in the appellate courts. But that is not the question. *Cupp* indicates that due process is not violated in every case where an isolated sentence implicates constitutional problems, and the Court's hypertechnical arguments only highlight how far it has strayed from the norm of "fundamental fairness" in order to invalidate this conviction.

Thus, even accepting the Court's reasonable-juror test, I cannot agree that the charge read as a whole was constitutionally infirm. But quite apart from that, I would take a different approach than the Court does with respect to the applicable legal standard. It appears that under the Court's approach it will reverse a conviction if a "reasonable juror" hypothetically *might* have understood the charge unconstitutionally to shift a burden of proof, even if it was unlikely that a single juror had such an understanding. I believe that it must at least be *likely* that a juror so understood the charge before constitutional error can be found. Where as here a *Sandstrom* error is alleged involving not a conclusive presumption, but a rebuttable presumption, language in the charge indicating the State's general burden of proof and the jury's duty to examine all surrounding facts and circumstances generally should be sufficient to dissipate any constitutional infirmity. Otherwise we risk finding constitutional error in a record such as this one, after finely parsing through the elements of state crimes that are really far removed from the problems presented by the burden of proof charge in *Winship*. I do not believe that the Court must inject itself this far into the state criminal process to protect the fundamental rights of criminal defendants. I dissent and would reverse the judgment of the Court of Appeals.