******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

McDONALD, J., concurring in part and concurring in the judgment. I agree with, and join, parts II and III of the majority opinion. Specifically, I agree with the majority that the evidence was sufficient to establish the identity of the defendant, Robert Honsch, as the person who murdered the victim and that the trial court properly declined to provide the jury with an instruction regarding fingerprint evidence. I also agree with the result, but not the reasoning, of part I of the majority opinion. As to part I, I agree that this court should adopt a "permissive presumption" that provides that, when the location of a killing is unknown, and the victim's body is found in the forum state, it may be inferred or presumed that the death occurred in the state for purposes of establishing territorial jurisdiction. See, e.g., 1 A.L.I., Model Penal Code and Commentaries (1985) § 1.03 (4), p. 34 (Model Penal Code and Commentaries); 4 W. LaFave et al., Criminal Procedure (4th Ed. 2015) § 16.4 (c), p. 931; see also, e.g., *State* v. *McDowney*, 49 N.J. 471, 475, 231 A.2d 359 (1967) ("circumstantial evidence [such] as the presence of the body within the [s]tate has been held sufficient to allow the drawing of an inference that the crime was committed at that place"). I write separately with respect to part I of the majority opinion to emphasize that this "permissive" or "rebuttable" presumption is effectively a conclusive presumption.

As the majority opinion aptly lays out, there is significant support for our adoption of a presumption that permits an inference that a homicide occurred in the state where the victim's body was found for purposes of establishing jurisdiction when there is no other evidence concerning the location of the homicide. See part I of the majority opinion. At least twenty states have codified the presumption in legislation; see footnote 9 of the majority opinion and accompanying text; and seven other states apply the presumption as a matter

of common law. See footnote 10 of the majority opinion and accompanying text. More important, there is a strong public policy rationale that weighs heavily in favor of adoption. See part I of the majority opinion. The presumption "endeavors to prevent abortion of the prosecution in cases [in which] the body of the victim is found within the state but it is unclear where the death, injury, or conduct occurred. It may be provable, for example, that the body was thrown from a car driven by the defendant at a place near the state line and that the defendant owned the lethal weapon. That alone might make a circumstantial case of murder, without establishing a locus for jurisdiction." (Footnote omitted.) Model Penal Code and Commentaries, supra, § 1.03, comment 8, pp. 63–64. As we have explained, when "the place of [the victim's] death is unknown or [when] there [is] a variance in the proof thereof . . . [n]o person should escape punishment for murder because he is so clever as to conceal . . . the place where the victim was killed or died." (Internal quotation marks omitted.) *State* v. *Weinberg*, 215 Conn. 231, 252, 575 A.2d 1003, cert. denied, 498 U.S. 967, 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990). In short, a presumption ensures that a homicide will not go unprosecuted simply because the culprit was able to conceal the location of the crime.

Nevertheless, I think it is important to recognize the presumption for what it is—an effectively conclusive presumption. See, e.g., *Francis* v. *Franklin*, 471 U.S. 307, 314 n.2, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985) ("A mandatory presumption may be either conclusive or rebuttable. A conclusive presumption removes the presumed element from the case once the [s]tate has proved the predicate facts giving rise to the presumption. A rebuttable presumption does not remove the presumed element from the case but [instead] requires the jury to find the presumed element unless the defen-

dant persuades the jury that such a finding is unwarranted."). Although courts often refer to this presumption as either "rebuttable" or "permissive," the reality is that a criminal defendant has no meaningful ability to rebut the presumption without incriminating himself in the crime. Indeed, the majority explains that, "[i]f the defendant wishes to defeat jurisdiction, he generally must make some showing as to where the death or injury took place. That showing may, in turn, lay the predicate for a proceeding in the proper jurisdiction." (Internal quotation marks omitted.) Part I of the majority opinion, quoting Model Penal Code and Commentaries, supra, § 1.03, comment 8, p. 64. But, in most situations, the ability to make that showing will run headlong into the defendant's fifth amendment privilege against self-incrimination. Cf. *State* v. *Wogenstahl*, 150 Ohio St. 3d 571, 582, 84 N.E.3d 1008 (2017) (French, J., concurring) (questioning constitutionality of Ohio statute that requires conclusive presumption that crime was committed in Ohio if it "cannot reasonably be determined in which [state] it took place" (internal quotation marks omitted)), cert. denied, 584 U.S. 1004, 138 S. Ct. 2576, 201 L. Ed. 2d 298 (2018). How is a criminal defendant to make a showing that the homicide occurred in another state without implicating himself in the crime?[1] However, given the strong public policy rationale for the adoption of the presumption, and the significant legal support for its adoption, I agree with the majority that it is appropriate for this court to adopt the presumption.

For the foregoing reasons, I respectfully concur in part.

---

[1] I recognize, as the majority posits, that there may be circumstances in which it would be "feasible" for a defendant to present noninculpatory evidence as to the location of the crime. Footnote 11 of the majority opinion and accompanying text. In practice, however, it would be highly unlikely that a defendant could muster such evidence in a manner sufficient to rebut the presumption without incriminating himself.