**Mark Edward THOMPSON, Petitioner–Appellant,**

v.

**Gary T. DIXON, Warden, Central Prison, Respondent–Appellee.**

**No. 92–6779.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 2, 1992.

Decided Feb. 19, 1993.

Richard Brooks Glazier, Beaver, Holt, Richardson, Sternlicht, Burge & Glazier, P.A., Fayetteville, NC, for petitioner-appellant.

Clarence Joe DelForge, III, Asst. Atty. Gen., North Carolina Dept. of Justice, Raleigh, NC, argued (Lacy H. Thornburg, Atty. Gen., on brief), for respondent-appellee.

Before WILKINSON and NIEMEYER, Circuit Judges, and MORGAN, United States District Judge for the Eastern District of Virginia, sitting by designation.

OPINION

MORGAN, District Judge:

Petitioner Mark Edward Thompson appeals the dismissal of his petition for a writ of habeas corpus in which he challenged a jury instruction given at his capital murder trial. The Petitioner claims the state trial court violated his due process rights under the Fourteenth Amendment when it instructed the jury that a person is presumed to be sane unless he or she proves otherwise. The district court granted the state of North Carolina's ("State") motion for summary judgment, finding the state trial court's presumption-of-sanity instruction did not in any way relieve the State's burden of proving the intent which was an element of the offenses of which he was

convicted. We affirm the judgment of the district court.

## I.

In the fall of 1986 the Petitioner was a 17-year old enlisted soldier in the Army stationed at Fort Bragg, North Carolina. There he met Jeffrey Karl Meyer, and the two began playing "Dungeons and Dragons," an adventure game in which the participants enact roles and carry out adventures in a medieval setting. In November 1986, the Petitioner and Meyer were playing a game of Dungeons and Dragons which called for several "Ninja" assassins to enter the house of an elderly couple and assassinate them. The two chose the home of Mr. and Mrs. Paul Kutz in rural Cumberland County, North Carolina, because it had what resembled a moat around their house. On December 1, 1986, the Petitioner and Meyer went to the Kutz's home around 11:15 p.m. and broke in. They found Mr. Kutz, age 69, in his recliner and Mrs. Kutz, age 62, asleep in her bed. They killed Mr. Kutz by stabbing him 17 times and cutting his throat. The two killed Mrs. Kutz by holding her down and stabbing her numerous times. After stealing jewelry, credit cards and a television set, the Petitioner and Meyer returned to Fort Bragg. They were stopped by military police who discovered the stolen property. The military police notified Cumberland County authorities who discovered the bodies of Mr. and Mrs. Kutz. The Petitioner and Meyer were subsequently arrested.

The Petitioner confessed to being present at the murders, stealing the property and watching Meyer stab the Kutz's. The Petitioner later confessed to his psychologist that he participated in the stabbing of Mrs. Kutz. At trial, the Petitioner contended that he was not guilty by reason of insanity and that he lacked the mental capacity to formulate the requisite intent required for murder. In his instructions at the close of trial, Judge Herring instructed the jury that "sanity or soundness of mind is the natural and normal condition of people; therefore, everyone is presumed sane until the contrary is made to appear." (J.A. 64).

On October 26, 1989, the jury rejected the Petitioner's insanity and mental illness defenses and found him guilty of two counts of first-degree murder, two counts of robbery with a dangerous weapon, and one count of first-degree burglary. He was convicted and sentenced to three consecutive life terms of imprisonment plus two forty-year terms which were combined to run subsequent to the expiration of the life sentences.

The Petitioner appealed all judgments to the North Carolina Supreme Court. The North Carolina Supreme Court found no constitutional error in his trial. *State v. Thompson*, 328 N.C. 477, 402 S.E.2d 386 (1991). The Petitioner filed a habeas corpus petition pursuant to 28 U.S.C. § 2254 with the district court on November 25, 1991. His sole claim was that the state trial court violated his due process rights under the Fourteenth Amendment when it instructed the jury that he was presumed to be sane unless he proved otherwise. On January 8, 1992, the State filed its answer to the Petitioner's habeas corpus petition and moved for summary judgment. On July 2, 1992, the district court granted the State's motion for summary judgment, finding the state trial court's presumption-of-sanity instruction did not in any way relieve the State of its burden of proving the intent which was an element of the offenses of which he was convicted by the jury. 794 F.Supp. 173. (J.A. 38). The Petitioner argues on appeal that these presumptions deprived him of his due process rights by removing the presumption of innocence and relieving the State of its burden of proving beyond a reasonable doubt that he intentionally committed the felonies of which he was convicted.

## II.

In collateral review of a jury charge, the Court will grant relief only if the habeas petitioner demonstrates "that 'the offending instruction is so oppressive as to render a trial fundamentally unfair.'" *Cooper v. North Carolina*, 702 F.2d 481, 483 (4th Cir.1983) (quoting *Adkins v. Bordenkircher*, 517 F.Supp. 390, 399

(S.D.W.Va.1981), *aff'd*, 674 F.2d 279 (4th Cir.1982)). The Petitioner asserts that the presumption-of-sanity instruction at issue in this case "is nothing short of an unconstitutional burden shifting jury charge and blatantly is at odds with decisions of the United States Supreme Court in *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) and *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)." Petitioner's Brief at 18. This Court disagrees.

In *Sandstrom v. Montana*, the defendant was convicted under Montana law of "deliberate homicide" which the statute defined as "purposely or knowingly" causing the death of another human being. 442 U.S. at 512, 99 S.Ct. at 2453. Montana conceded that "purpose" was equivalent to "intent," and thus that the proof of defendant's intent to kill would suffice to establish the "purpose" element. *Id.* at 521, 99 S.Ct. at 2458. The trial court instructed the jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts." *Id.* at 513, 99 S.Ct. at 2453. The Supreme Court found this instruction unconstitutional as it shifted to the defendant the burden of proving his lack of intent as well as relieving the state of its burden of proof: "a reasonable jury could well have interpreted the presumption as 'conclusive,' ... as an irrebuttable direction by the Court to find intent once convinced of the facts triggering the presumption." *Id.* at 517, 99 S.Ct. at 2456.

*Sandstrom* was followed by *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). Franklin was charged with "malice murder" which required Georgia to prove "malice aforethought." *Id.* at 311 n. 1, 105 S.Ct. at 1969 n. 1. The defendant's sole defense was that he lacked the "requisite intent to kill." *Id.* at 311, 105 S.Ct. at 1969. The trial court instructed the jury that "[t]he acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts...." *Id.* As in *Sandstrom*, the *Francis* Court found

this instruction violated the Fourteenth Amendment's requirement that Georgia prove every element of the offense beyond a reasonable doubt. The Court again reasoned that such an instruction created an unconstitutional shifting of the burden of proof: "a reasonable juror could have understood the two sentences as a mandatory presumption that shifted to the defendant the burden of persuasion on the element of intent once the State had proved the predicate acts." *Id.* at 316, 105 S.Ct. at 1972.

The Petitioner contends that the presumption-of-sanity instruction at his trial constituted a violation of the *Francis/Sandstrom* rule. The trial judge instructed the jury that "sanity or soundness of mind is the natural and normal condition of people; therefore, everyone is presumed sane until the contrary is made to appear." (J.A. 64). The Petitioner's first contention is that this instruction tainted his sanity defense by implying that he possessed the requisite intent to commit the crimes with which he was charged. He argues:

> Without some limiting instruction or at the very least a notation that the instruction applies only to considerations of sanity, the trial court's instructions concerning soundness of mind clearly carry over to all the elements that the jury must decide in the case. If a person is presumed of sound mind, he obviously is considered to intend the consequences of his acts, and if that is so, this presumption relieves that State of having to prove specific intent to kill.... A juror hearing this instruction could reasonably have believed that the burden was on the defendant to show that he did not intend to do what he did, in essence, that his acts were not the product of his will. If one is of sound mind, one is necessarily cognizant of the result of any action taken.

Petitioner's Brief at 24–25. The Petitioner further argues that unlike the affirmative defense of insanity, he had no obligation to prove his defense of lack of mental capacity. He protests that "[t]he trial court never suggested that its instructions relating to the presumption of sanity and soundness

of mind should *not* be considered *or did not* relate to Petitioner's mental illness negating specific intent defense." *Id.* at 28.

This Court disagrees that the trial court failed to properly limit its presumption-of-sanity instruction. Judge Herring repeatedly instructed the jury that the Petitioner had to prove his affirmative defense of insanity to the satisfaction of the jury (J.A.· 56–57, 65–66, 82, 94) but that the State had the burden of proving each essential element of the crimes charged, *including the requisite intent*, beyond a reasonable doubt (J.A. 55, 63, 72–73, 75–77, 79–80, 84–85, 90–93, 95–96, 99–101, 103–104). In addition, the trial court instructed the jury to consider the Petitioner's lack of mental capacity in connection with all the *mens rea* elements of each crime to determine whether the State had proven the requisite intent beyond a reasonable doubt. (Instruction on the specific intent element of first-degree burglary, J.A. 69–70; Instruction on the specific intent element of robbery with a dangerous weapon of Paul Kutz, J.A. 75–76; Robbery with a dangerous weapon of Janie Kutz, J.A. 80; First-degree murder of Paul Kutz, J.A. 87–88; and First-degree murder of Janie Kutz, J.A. 98–99).

Accordingly, we find the presumption-of-sanity instruction did not violate the *Francis/Sandstrom* rule. Those two cases condemned jury instructions that were clearly unconstitutional. In criminal trials, an instruction that presumes one's *intent* solely from one's *actions* clearly shifts the burden to the defendant to prove that he lacked the intent such an instruction presumes to flow from his actions. For this reason alone, *Sandstrom* and *Francis* are distinguishable from the present case. The trial judge did not instruct the jury that "a person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts," *Francis*, 471 U.S. at 311, 105 S.Ct. at 1969, or that "the law presumes that a person intends the ordinary consequences of his voluntary acts." *Sandstrom*, 442 U.S. at 513, 99 S.Ct. at 2453. Rather, the trial court instructed the jury that "sanity or soundness of mind is the natural and normal condition of people; therefore, everyone is presumed sane until the contrary is made to appear." (J.A. 64). It does not follow from such an instruction that a person "intends" the usual or natural consequences of his actions merely because he or she is sane.

We find the *Francis/Sandstrom* rule inapposite because Judge Herring did not give the following clearly prohibited instruction: "persons of sound mind are presumed to intend the natural or probable consequences of their acts." Indeed, the post-*Francis* cases cited in the Petitioner's brief all share the common instructional error absent in this case: everyone of sound mind is presumed to intend the probable consequences of their actions. Petitioner's Brief at 23–24; Respondent's Brief at 12–14. As stated above, the trial judge repeatedly instructed the jury that the State had the burden of proving each essential element of the offenses charged, including the requisite intent, beyond a reasonable doubt. Unlike Montana in *Sandstrom* and Georgia in *Francis*, North Carolina was not relieved of its burden of proving the Petitioner's intent to commit the offenses of which the jury convicted him.

In addition, both the United States Supreme Court and the Fourth Circuit have held that placing the burden of proof of insanity on a criminal defendant does not constitute an impermissible burden-shifting presumption and that a state may rely upon the presumption-of-sanity law where, as here, sanity is not an essential element of the crime. *Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952) (state may impose burden of proving insanity on defendant). *See also Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *Rivera v. Delaware,* 429 U.S. 877, 97 S.Ct. 226, 50 L.Ed.2d 160 (1976); *Mullaney v. Wilbur,* 421 U.S. 684, 702 n. 31, 95 S.Ct. 1881, 1891 n. 31, 44 L.Ed.2d 508 (1975).

The Petitioner raises a similar claim to one this court rejected in *Cooper v. North Carolina,* 702 F.2d 481 (4th Cir.1983). Cooper was convicted by a North Carolina state court for the murder of his wife and

four children. In addition to presenting an affirmative defense of not guilty by reason of insanity, Cooper also claimed he lacked the mental capacity to formulate the specific intent required for first-degree murder. *Id.* at 484. The trial judge failed to instruct the jury to consider the mental illness evidence in determining whether North Carolina had proven the necessary intent. Rather, the trial court merely instructed the jury to consider the mental illness evidence with respect to Cooper's affirmative defense of insanity. *Id.* at 485. Cooper claimed on collateral review, as petitioner does in the present case, that this instruction effectively shifted the burden to him on the issue of intent. Then Judge, now Chief Judge Ervin wrote for a Court that unanimously rejected Cooper's argument:

> It is clear that a state may make insanity an affirmative defense to be proven by the defendant ... *and may rely on a presumption of sanity* in proving its case-in-chief in a criminal prosecution.... It is equally clear that the state must prove beyond a reasonable doubt every element of the crime with which a defendant is charged....
>
> While there is a slight possibility that the jury could have misunderstood the trial judge's somewhat imprecise instruction, Cooper has not made the showing that "the offending instruction [rendered the] trial fundamentally unfair," ... necessary to support the grant of the writ of habeas corpus.

*Id.* at 484–85 (citations and quotation omitted; emphasis added).

In comparison, the trial court's instructions in the present case were more thorough and precise than those in *Cooper*. As discussed, *supra*, Judge Herring repeated-

ly instructed the jury that the State bore the burden of proving every element, including intent, beyond a reasonable doubt. Moreover, this Court has held that "[i]t is well established that a defendant in a criminal prosecution is presumed to be sane." *United States v. Marable*, 657 F.2d 75, 76 (4th Cir.1981). *See also Satterfield v. Zahradnick*, 572 F.2d 443, 445 n. 1 (4th Cir.) (citing *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), and *Rivera v. Delaware*, 429 U.S. 877, 97 S.Ct. 226, 50 L.Ed.2d 160 (1976)) ("It is worth noting that placing the burden of proof of insanity on a criminal defendant does not violate the rule of *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), that the State proved beyond a reasonable doubt all elements of the offense charged."), *cert. denied*, 436 U.S. 920, 98 S.Ct. 2270, 56 L.Ed.2d 762 (1978).* Thus, an instruction to that effect cannot be said to be an unconstitutional burden shifting jury charge that is "blatantly at odds" with *Sandstrom* and *Francis*.

### III.

■ Further, the Court notes that were it to hold that the presumption-of-sanity instruction violated the Fourteenth Amendment's requirement that a state prove every element of a crime beyond a reasonable doubt, this would depart from the prior precedent of both the Supreme Court and this Circuit and constitute a "new rule" of criminal procedure. In *Teague v. Lane*, the Supreme Court held that when federal courts are faced with a habeas petition that seeks a "new" constitutional rule that would disturb the results of the state trial court if applied retroactively to the petitioner's case, the court cannot proceed to the

---

* *See also Medina v. California*, —— U.S. ——, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992) (a state may establish a presumption that defendant is competent to stand trial and make him shoulder the burden of overcoming that presumption); *Wood v. Marshall*, 790 F.2d 548 (6th Cir.1986) (determination of whether sanity is an element of crime charged depends on state law, for purposes of determining whether instruction requiring defendant to prove sanity violates due process by placing burden of proof of an element of charged offense on defendant), *cert. denied*, 479 U.S. 1036, 107 S.Ct. 889, 93 L.Ed.2d 842 (1987); *Stanley v. Mabry*, 596 F.2d 332 (8th Cir.) (where jury instructed state had burden to prove beyond a reasonable doubt every element of crime, no constitutional violation occurred by placing burden of proof on defendant to prove his insanity, despite contention that element of malice aforethought in murder charge was so inextricably intertwined with presumption of sanity that to require defendant to prove his insanity required him to disprove an essential element of the offense), *cert. denied*, 444 U.S. 946, 100 S.Ct. 307, 62 L.Ed.2d 315 (1979).

merits of the petitioner's claim. 489 U.S. 288, 300, 109 S.Ct. 1060, 1069, 103 L.Ed.2d 334 (1989). *See also Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). It is well settled that a new rule of constitutional law, established after a defendant's conviction has become final, "cannot be used to attack the conviction on federal habeas grounds unless the rule falls within one of two narrow exceptions." *Sawyer v. Smith,* 497 U.S. 227, 233, 110 S.Ct. 2822, 2826, 111 L.Ed.2d 193 (1990).

This Court finds that the new rule the Petitioner seeks does not address "categorical guarantees accorded by the Constitution," *Penry,* 492 U.S. at 329, 109 S.Ct. at 2952, nor is it a " 'watershed rule of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Saffle v. Parks,* 494 U.S. 484, 495, 110 S.Ct. 1257, 1263, 108 L.Ed.2d 415 (1990) (quoting *Teague,* 489 U.S. at 311, 109 S.Ct. at 1075). Although this Court has rejected the Petitioner's challenge to the jury instructions on the merits, *Teague* would prevent this Court from granting the Petitioner the relief sought even if his challenge had merit. This Court could only grant Petitioner relief retroactively by means of a new rule if the proposed new rule qualified as one of the two exceptions described, and this Court finds that it does not so qualify.

### IV.

In summary, the Court concludes that the Petitioner has failed to carry his burden on collateral review to demonstrate that the sanity instruction was so "oppressive" as to render his trial "fundamentally unfair." *Cooper,* 702 F.2d at 483. Accordingly, the Court finds that the district court was correct in granting North Carolina's motion for summary judgment and dismissing the Petitioner's petition for habeas corpus relief.

The judgment of the district court is therefore

AFFIRMED.