827 A.2d 851

**Paul GRAHAM**

v.

**STATE of Maryland.**

No. 2774, Sept. Term, 2001.

Court of Special Appeals of Maryland.

June 26, 2003.

468

Michael R. Braudes, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for appellant.

Celia Anderson Davis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for appellee.

Submitted before SONNER, ADKINS and GREENE, JJ.

ADKINS, J.

Paul Graham, appellant, was convicted by a jury in the Circuit Court for Baltimore City of wearing, carrying, or transporting a handgun and obliterating a manufacturer's identification mark on a handgun. Appellant presents four questions for our review, which we have rephrased and reordered:

I. Did the trial court err in refusing to instruct the jury on the defense of necessity?

II. Did the trial court err in instructing the jury that proof that the defendant possessed a weapon with an obliterated serial number was presumptive evidence that he obliterated that mark, without explaining that

such a rebuttable presumption did not shift the burden of persuasion to the defendant?

III. Was the evidence legally sufficient to sustain a conviction of obliterating an identification mark?

IV. Did the trial court err in permitting the State to engage in improper closing argument by telling the jury of the presumption?

We find no error in the instructions on the wearing, carrying, or transporting charge, but conclude that the trial court did err in its instructions on the obliteration charge. We therefore affirm appellant's conviction for wearing, carrying or transporting a handgun, and vacate appellant's conviction for obliterating a manufacturer's identification mark. We also find that if the jury had been properly instructed, there was sufficient evidence to convict appellant on the obliteration charge. In light of our decision to vacate, we need not separately address appellant's complaint about closing argument.

## FACTS AND LEGAL PROCEEDINGS

Baltimore City Police Officer Scott Ripley testified that at approximately 12:25 a.m. on October 25, 2001, while he was riding in a marked police car in the 6200 block of Boston Street, he saw a man pointing a gun at another man and a woman. The woman was "lying on the ground face down" and the man had his hands up in the air and was moving "as if he was going to go down on the ground." According to Ripley, the assailant was holding a dark blue steel .38 caliber revolver. As the officer was driving down the street, the assailant holding the gun looked at him, then turned and "took off running." At trial, Ripley identified appellant as the man who had been holding the gun.

Ripley called for back up. He chased appellant, first by car, then on foot, for about six blocks, but lost sight of him in the 1200 block of Tennant Way. At times while appellant was running, the officer could see the gun in his hand. The last

time the officer saw the gun was when appellant was turning onto Tennant Way.

Sergeant David Hendricks testified that when he was in the area of Elliott Street, Travers Way, and Toone Street, near Tennant Way, he saw Ripley running between buildings. After a brief conversation with Ripley, he and other officers began to canvass the area for appellant. Hendricks heard noise coming from some shrubbery. He shined his flashlight on the shrubbery and saw appellant. After appellant came out of the shrubbery, Ripley arrived and identified appellant as the individual whom he had seen with the gun.

Appellant was arrested. Ripley then returned to the 6200 block of Boston Street to find the man and woman at whom appellant had been pointing the gun, but they had left.

Detective Frank Monday found a blue steel .38 caliber handgun under a bush at 1200 Tennant Way, about 25 feet from where appellant was found. Hendricks retrieved the gun. According to Hendricks, the gun was distinctive because it was large-framed and short-barreled. Hendricks looked for the serial number on the gun, but was unable to find it. Hendricks handed the gun to Ripley. At trial, Ripley said that he had seen appellant holding that gun.

Ted Turner, a crime lab technician employed by the Baltimore City Police Department, testified that the gun was operable. He also said that when he received the gun, the serial number had been "scratched or obliterated," explaining that it was "altered so that you could not clearly tell what the numbers were there." We shall set forth additional facts as they pertain to our discussion of the issues.

## DISCUSSION

### I.

### Necessity Instruction

After appellant was arrested, he explained to Detective Monday how he came to have the gun. He told Monday that

he had taken money out of his pocket because he was looking for bus fare. While he was counting his money, a man approached him and robbed him at gunpoint. A woman was with the man. Appellant grabbed the gun from the man to protect himself. He ran because he was scared when he saw the police. Appellant's tape-recorded statement was played for the jury.

At trial, defense counsel told the jury in her opening statement that appellant's defense was necessity. She said, "there was some physical force or circumstance that caused [appellant] to have the handgun at that time." She recited the elements of a necessity defense in her opening. When testimony concluded, defense counsel requested an instruction on "necessity," as enunciated in *State v. Crawford,* 308 Md. 683, 698–99, 521 A.2d 1193 (1987). The trial court gave the pattern instruction on duress instead.

Appellant contends that the trial court erred in refusing to give the necessity instruction. The State counters, first, that the record on appeal does not include the actual instruction that appellant requested, and second, that appellant did not specifically request the necessity instruction. In addition, the State maintains that it was not error for the trial court to use the duress instruction to instruct the jury.

## A.

### Failure To Include Instruction In The Record

At trial, defense counsel told the trial court that she had given a request for an instruction on necessity to the court's law clerk. When the court commented that it was a pattern jury instruction, defense counsel explained, "It's in the notes. It's under that rule of duress."

In the comment to the Maryland criminal pattern jury instruction for duress, the committee discusses the relationship between duress and necessity. *See* MPJI–Crim. 5:03 (2001). Quoting *Crawford,* 308 Md. at 698–99, 521 A.2d 1193, the comments set out the five elements of a necessity defense

listed by the *Crawford* Court, which are the same factors that defense counsel listed in her opening statement.

After the court gave the pattern instruction on duress, defense counsel excepted, saying that she had asked for the necessity instruction. The trial court responded that "[t]he necessity exception is really the duress instruction." Defense counsel then asked that a copy of the necessity instruction be marked as an exhibit and included in the court's file, which it was. In these circumstances, the record does include the instruction that defense counsel requested, and the exception was preserved for our review.

## B.

### Merits

■■■ Md. Rule 4–325(c) provides that "[t]he court may, and at the request of any party shall, instruct the jury as to the applicable law[.]" Upon request, the trial court is required to give an instruction that correctly states the applicable law if it has not been fairly covered in other instructions. *See State v. Martin,* 329 Md. 351, 356, 619 A.2d 992, *cert. denied,* 510 U.S. 855, 114 S.Ct. 161, 126 L.Ed.2d 122 (1993); *Mack v. State,* 300 Md. 583, 592, 479 A.2d 1344 (1984). If the requested instruction is fairly covered by the instructions actually given, however, it need not be given. *See Grandison v. State,* 341 Md. 175, 211, 670 A.2d 398 (1995), *cert. denied,* 519 U.S. 1027, 117 S.Ct. 581, 136 L.Ed.2d 512 (1996).

■■■ Defense counsel requested the following necessity instruction:

Necessity is a valid defense to the crime of unlawful possession of a handgun when five elements are present:

(1) the defendant must be in present[,] imminent, and impending peril of death or serious bodily injury, or reasonably believe himself or others to be in such danger;

(2) the defendant must not have intentionally or recklessly placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;

(3) the defendant must not have any reasonable, legal alternative to possessing the handgun;

(4) the handgun must be made available to the defendant without preconceived design; and

(5) the defendant must give up possession of the handgun as soon as the necessity or apparent necessity ends.

The duress instruction that the trial court gave instead was:

You're instructed of the following, is that there will be claimed or argued, if you will, or that evidence before you has been heard[,] that the defendant acted under the influence of a overpowering force. This is called "duress."

Duress will excuse an act that would otherwise be criminal. You're required to find the defendant not guilty if all of the following four factors are present:

(1) that the defendant actually believed that duress placed him in immediate and impending danger of death or serious bodily harm;

(2) that the defendant's belief was reasonable;

(3) that the defendant had no reasonable opportunity for escape; and

(4) that the defendant committed the crime because of the duress.

The defense of duress is not established by proof that the defendant had been threatened with violence at an earlier time, but must have been under a present threat at the time of the actual commission of the crime charged.

According to the Maryland pattern jury instruction comment, necessity is not listed as a separate instruction because of the interrelationship between duress and necessity. *See* MPJI–Crim. 5:03 & cmt. The comment explains that duress is the result of pressure by a person, and necessity is the result of pressure from circumstances. The "Notes on Use," indicate that the trial court should use the duress instruction "if the defendant is charged with an offense other than escape, murder or assault with intent to murder and there is an issue of excuse generated by evidence of duress or necessity." *Id.*

The instruction that the court gave was sufficiently broad that, if the jury believed appellant, it could have found him not guilty of possessing a handgun. If the jury believed appellant's claims that the couple threatened him using the gun, the jury would have applied this instruction to reach a not guilty verdict. The trial court did not err in failing to give the necessity instruction that appellant sought.

Citing *Crawford* as reason to reverse, appellant contends that his version of events, "which was far more straightforward and likely than Crawford's, clearly generated the defense of necessity." In *Crawford*, however, the problem was not that the trial court gave the duress instruction, rather than the necessity instruction, but that the trial court gave no necessity or duress instruction at all. *See Crawford*, 308 Md. at 691, 521 A.2d 1193. Here, the trial court recognized that necessity was a valid defense and gave an appropriate instruction.

## II.

### Instructions On "Presumptive Evidence" Of Obliteration

Appellant contends that his conviction for obliterating an identification number on the handgun must be vacated. He argues that the trial court's instructions unconstitutionally permitted the jury to conclude that a statutory presumption that a person who possesses a gun with an obliterated serial number is the person who obliterated the mark, shifted the burden of proving that he obliterated the mark from the State to the appellant. The error, he contends, was that the court refused defense counsel's request that it "explain to the jury what 'rebuttable' means."

The State counters that the trial court correctly instructed the jury that the presumption was rebuttable. It asserts that "the presumption is not 'mandatory' and the presence of a rebuttable presumption does not alter the prosecution's burden of proof of guilt beyond a reasonable doubt." For that reason, the court did not abuse its discretion in refusing to define the term "rebuttable."

## A.

### The Jury Instructions

When the trial court instructed the jury regarding the charge of obliterating the identification mark, it stated:

In this case, the second charge is whether or not the defendant, Paul Graham, did obliterate from the gun, remove or change or alter, the manufacturer's identification mark on the firearm, whether from the evidence beyond a reasonable doubt it proves that the defendant here in court, as charged, did, in fact, cause the obliteration, removal of the identification mark from the said firearm.

Although the trial court had not told the jury about the statutory presumption, the prosecutor was permitted to argue it in his closing. He advised jurors that, "[u]nder the law in the State of Maryland, a person in possession of a handgun with an obliterated serial number is presumed to be the person who obliterated the serial number." Defense counsel objected, but the trial court overruled that objection.

After both counsel had completed their closing arguments, the trial court told the jury:

Ladies and gentlemen of the jury, Madam Forelady, **you have heard in argument as to what the law is.** The Court instructs you that obliterating a firearm is under Article 27, Section 444. It reads, as follows: "It shall be unlawful for anyone to obliterate, remove, change, or alter the manufacturer's identification mark or number on any firearm. Whenever on trial for a violation of this section the defendant is shown to have or have had possession of any such firearm, **such fact shall be presumptive evidence that the defendant obliterated,** removed, changed or altered the manufacturer's identification mark or number."

**The Court further instructs you that the word "presumption" is a rebuttable presumption and that must be reviewed as to the evidence as before you.** (Emphasis added.)

At a bench conference, the court denied defense counsel's request for an explanation of "what 'rebuttable' means[,]" and noted her exception for the record.

## B.

### Jury Instructions Regarding Evidentiary Presumptions And Inferences

 "Inferences and presumptions are a staple of our adversary system of factfinding" because they are "often necessary for the trier of fact to determine the existence of an element of the crime—that is, an 'ultimate' or 'elemental' fact—from the existence of one or more 'evidentiary' or 'basic' facts." *County Court of Ulster County v. Allen*, 442 U.S. 140, 156, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979). These "staples" are not without important constitutional limits, however. "[I]n criminal cases, the ultimate test of any device's constitutional validity in a given case remains constant: the device must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt." *Id.*

The Supreme Court has made it clear in a series of cases that, regardless of whether an evidentiary presumption or inference is constitutional on its face, jury instructions regarding such a presumption or inference can be unconstitutional.

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." This "bedrock, 'axiomatic and elementary' [constitutional] principle," prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime.... The question ... is ... "whether the challenged jury instruction had the effect of relieving the State of the burden of proof ... on [a] critical question[,]" ... by creating a mandatory presumption[.]

*Francis v. Franklin,* 471 U.S. 307, 313, 105 S.Ct. 1965, 1970–71, 85 L.Ed.2d 344 (1985) (citations omitted); *see Sandstrom v. Montana,* 442 U.S. 510, 520–24, 99 S.Ct. 2450, 2457–59, 61 L.Ed.2d 39 (1979); *County Court of Ulster County,* 442 U.S. at 157–63, 99 S.Ct. at 2224–28 (1979); *Mullaney v. Wilbur,* 421 U.S. 684, 698–701, 95 S.Ct. 1881, 1889–91, 44 L.Ed.2d 508 (1975); *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970).

 To answer that question, courts must examine the specific language of the challenged instruction. *See Franklin,* 471 U.S. at 315, 105 S.Ct. at 1971.

> If a specific portion of the jury charge, considered in isolation, could reasonably have been understood as creating a presumption that relieves that State of its burden of persuasion on an element of an offense, the potentially offending words must be considered in the context of the charge as a whole. Other instructions might explain the particular infirm language to the extent that a reasonable juror could not have considered the charge to have created an unconstitutional presumption. This analysis "requires careful attention to the words actually spoken to the jury . . ., for whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction."

*Id.* (quoting *Sandstrom,* 442 U.S. at 514, 99 S.Ct. at 2454) (citation omitted). In these instruction cases, "[t]he federal constitutional question is whether a reasonable juror could have understood the [challenged language in the instruction] as a mandatory presumption that shifted to the defendant the burden of persuasion on the [contested] element . . . once the State had proved the predicate acts." *Id.,* 471 U.S. at 316, 105 S.Ct. at 1972.

In *Sandstrom v. Montana,* 442 U.S. at 523–24, 99 S.Ct. at 2459, the Supreme Court explained that jury instructions are unconstitutional when a reasonable juror might understand them to create either an irrebuttable presumption, or to create a mandatory but rebuttable presumption that shifts the bur-

den of persuasion on any element of the offense to the defendant.[1] Sandstrom confessed to killing a young woman, but argued that his personality disorder, aggravated by alcohol consumption, prevented him from doing so "purposely or knowingly." *Id.*, 442 U.S. at 512, 99 S.Ct. at 2453. The trial court instructed the jury that a competent person's acts are presumed to be the product of the person's will, and that such persons are presumed to intend the consequences of their acts.

The Supreme Court reversed Sandstrom's murder conviction because the jury might have misunderstood and misapplied that instruction. *See id.*, 442 U.S. at 524, 99 S.Ct. at 2459. The Court reasoned that, as given, the instruction might have led jurors to incorrectly conclude that once the prosecution showed that the defendant was "of sound mind and discretion," the defense bore the burden of disproving the

---

1. In contrast, jury instructions making it clear that the presumption shifts only the *burden of production* may be constitutional. For example, in *County Court of Ulster County v. Allen*, 442 U.S. 140, 160–61, 99 S.Ct. 2213, 2226–27, 60 L.Ed.2d 777 (1979), the Supreme Court approved a New York court's instructions regarding a permissive statutory presumption that all persons occupying a vehicle in which an illegal firearm is discovered jointly possess the weapon unless it was found "upon the person" of one occupant. The Court held that, as given, the

 instructions ma[d]e it clear that the presumption was merely a part of the prosecution's case, that it gave rise to a permissive inference available only in certain circumstances, rather than a mandatory conclusion of possession, and that it could be ignored by the jury even if there was no affirmative proof offered by defendants in rebuttal.

 *Id.*
 With respect to mandatory presumptions, the *Ulster County* Court recognized that they are "far more troublesome evidentiary device[s]" than permissive presumptions. *Id.*, 442 U.S. at 157, 99 S.Ct. at 2225. The Court noted, however, when a mandatory rebuttable presumption "merely shift[s] the burden of production to the defendant, following the satisfaction of which the ultimate burden of persuasion returns to the prosecution," it might be constitutional if it "never totally removed the ultimate burden of proof beyond a reasonable doubt from the prosecution." *Id.*, 442 U.S. at 159 n. 16, 99 S.Ct. at 2226 n. 16. Moreover, when the mandatory presumption "imposes an extremely low burden of production—*e.g.*, being satisfied by 'any' evidence—it may well be that its impact is no greater than that of a permissive inference, and it may be proper to analyze it as such." *Id.*

evidentiary presumption that he intended to kill the victim. *See id.*, 442 U.S. at 517–24, 99 S.Ct. at 2455–59. Whether the instructions were viewed as creating an unrebuttable presumption, or as creating such a rebuttable, burden of proof-shifting presumption, Sandstrom had been deprived of his right to due process of law. *See id.*

In *Francis v. Franklin*, the Supreme Court followed *Sandstrom* and its earlier decisions in disapproving a similar instruction on evidentiary inferences regarding homicidal intent, even though the jury was told that the presumption was rebuttable. During a prison escape, Franklin shot and killed a man as he tried to enter his house with a hostage whom Franklin was holding at gunpoint. Franklin was charged with "malice murder." At trial, his lack of malice defense was that when the victim slammed his front door, the gun accidentally fired through the door. The trial court instructed the jury that

> [t]he acts of a person of sound mind and discretion **are presumed** to be the product of the person's will, **but the presumption may be rebutted.** A person of sound mind and discretion **is presumed** to intend the natural and probable consequences of his acts **but the presumption may be rebutted.** A person will not be presumed to act with criminal intention but the ... Jury may find criminal intention upon a consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is prosecuted.

*Id.*, 471 U.S. at 311–12, 105 S.Ct. at 1969–70 (emphasis added).

The Supreme Court affirmed the reversal of Franklin's conviction. *See id.*, 471 U.S. at 311–13, 105 S.Ct. at 1969–70. The Court concluded that jurors reasonably could have interpreted this instruction as creating a mandatory rebuttable presumption that shifted the burden of persuasion on the critical state of mind element of the crime. The Court compared the "presumed" language in the instruction to similar language in the *Sandstrom* instruction:

The challenged sentences are cast in the language of command.... These words carry precisely the message of the language condemned in *Sandstrom* [.] The jurors "were not told that they had a choice, or that they *might* infer that conclusion; they were told only that the law presumed it. It is clear that a reasonable juror could easily have viewed such an instruction as mandatory." The portion of jury charge challenged in this case directs the jury to presume an essential element of the offense—intent to kill—upon proof of other elements of the offense—the act of slaying another. In this way the instructions "undermine the fact-finder's responsibility at trial, based on evidence adduced by the State, to *find* the ultimate facts beyond a reasonable doubt." ... A mandatory rebuttable presumption is perhaps less onerous [than a mandatory conclusive presumption] from the defendant's perspective, but it is no less unconstitutional.

*Id.,* 471 U.S. at 316–17, 105 S.Ct. at 1972–73 (quoting *County Court of Ulster County* )(emphasis added in *Franklin;* other citation omitted).

Significantly, the *Franklin* Court rejected the prosecution's argument that the trial court's instruction that the presumption was rebuttable "cured" its unconstitutionality. *See id.* Acknowledging that "[t]he language challenged here differs from *Sandstrom* ... in that the jury in this case was explicitly informed that the presumptions 'may be rebutted[,]' " the Court nevertheless concluded that "[t]his distinction does not suffice ... to cure the infirmity in the charge." *Id.,* 471 U.S. at 316, 105 S.Ct. at 1972. It then explained why:

When combined with the immediately preceding mandatory ["presumed"] language, the instruction that the presumptions "may be rebutted" could reasonably be read as telling the jury that it was required to infer intent to kill as the natural and probable consequence of the act of firing the gun unless the defendant persuaded the jury that such an inference was unwarranted. The very statement that the presumption "may be rebutted" could have indicated to a reasonable juror that the defendant bore an affirmative

burden of persuasion once the State proved the underlying act giving rise to the presumption. Standing alone, the challenged language undeniably created an unconstitutional burden-shifting presumption[.]

*Id.,* 471 U.S. at 318, 105 S.Ct. at 1973. *See also State v. Smith,* 374 Md. 527, 823 A.2d 664, 2003 Md. LEXIS 251, *57–63, No. 91, Sept. Term 2002 (filed May 9, 2003) (Raker, J., concurring)(citing *Franklin* and collecting authorities).

In *Diaz v. State,* 129 Md.App. 51, 740 A.2d 81 (1999), *cert. denied,* 357 Md. 482, 745 A.2d 436 (2000), we applied the lessons of *Sandstrom* and *Franklin* to section 444. The trial court used the statutory language in instructing the jury that

possession of . . . a firearm [with the manufacturer's mark obliterated, removed, changed, or altered] is presumptive evidence that the defendant obliterated, removed, changed, or altered the identification mark or number. Do you understand presumptive evidence?

That if you find that the defendant had possession of that firearm then it is presumptive, it is presumed true that the defendant obliterated, removed, changed or altered the identification mark or number.

*Id.* at 63, 740 A.2d 81. Like the instruction in *Sandstrom,* this instruction was unconstitutional because "giving a jury the bare statutory language, without explaining to them that the presumption may be overcome, in this context effectively turns a rebuttable presumption into an irrebuttable presumption." *Id.* at 66, 740 A.2d 81.

This case differs from *Sandstrom* and *Diaz* in that the trial court explicitly told the jury that the evidentiary presumption was "rebuttable." In that regard, however, it resembles, and is governed by, *Francis v. Franklin.* We explain, by first examining the challenged portion of the instruction, and then considering "the potentially offending words . . . in the context of the charge as a whole." *See Franklin,* 471 U.S. at 315, 105 S.Ct. at 1971.

■ We think that reasonable jurors might conclude from the given instruction that they were obligated to infer that

appellant obliterated the mark unless he proved otherwise. As in *Franklin*, the challenged instruction was "cast in the language of command[.]" *Id.*, 471 U.S. at 316, 105 S.Ct. at 1972. The jury was told that evidence showing that the defendant "had possession of any such firearms ... **shall be presumptive evidence that the defendant obliterated ...** the manufacturer's identification mark or number." (Emphasis added.) As in *Franklin*, *Sandstrom*, and *Diaz*, "the 'jurors were not told that they had a choice, or that they *might* infer that conclusion[.]'" *Id.*, 471 U.S. at 316, 105 S.Ct. at 1972 (quoting *Sandstrom*). Thus, "'[i]t is clear that a reasonable juror could easily have viewed such an instruction as mandatory.'" *Id.* (quoting *Sandstrom*).

We see no substantive difference between the constitutionally suspect term "presumption" and the phrase "presumptive evidence." [2] Indeed, in this instance, the court used both terms interchangeably in its instruction. Either term could mislead jurors into believing that if they concluded that appellant possessed the obliterated weapon (the basic fact), they also had to conclude that appellant obliterated the mark on the weapon (the ultimate fact).

Nonetheless, such a mandatory presumption might still pass constitutional muster if the jury also was instructed that the presumption was rebuttable **and** that it did not shift the burden of persuasion to appellant. *See Franklin*, 471 U.S. at 314 n. 3, 105 S.Ct. at 1971 n. 3. Both instructions, however, did not happen in this case.

---

2. In *Shipp v. Autoville Ltd.*, 23 Md.App. 555, 328 A.2d 349 (1974), we examined the meaning and effect of the phrase "presumptive evidence" in a Maryland statute making certain evidence of a stop payment order on a check "presumptive evidence of [an] intent to cheat and defraud," in violation of Article 27 section 144. After Ms. Shipp stopped payment on a $30.20 check for car repairs, Autoville pressed criminal charges against her. At trial on Shipp's malicious prosecution claim against Autoville, the trial court directed a verdict in favor of Autoville, either because it erroneously believed that the statutory presumption was conclusive, or because it erroneously treated the presumption as a rebuttable presumption that shifted the burden of proof to Shipp. *See id.* at 574–75, 328 A.2d 349.

Here, the trial court instructed the jury only that the presumption "is . . . rebuttable[.]" We think that a reasonable juror might conclude from the language used by the trial court that appellant had the burden of disproving that he obliterated the identification mark on the gun. As in *Franklin*, "[w]hen combined with the immediately preceding mandatory language, the instruction that the presumption [is rebuttable] could reasonably be read as telling the jury that it was required to infer" that appellant obliterated the mark unless he could persuade them "that such an inference was unwarranted." *See Franklin*, 471 U.S. at 318, 105 S.Ct. at 1973. The trial court's statement that the "presumption" was "rebuttable" actually might have strengthened that perception, by "indicat[ing] . . . that the defendant bore an affirmative burden of persuasion once the State proved the underlying act giving rise to the presumption." *Id.; cf. County Court of Ulster County*, 442 U.S. at 161 n. 20, 99 S.Ct. at 2227 n. 20 (trial court's instructions made "it clear that the presumption was merely a part of the prosecution's case [and] . . . that it could be ignored . . . even if there was no affirmative proof offered by defendants in rebuttal").[3]

We are not persuaded that other instructions given by the trial court "explain[ed] the particular infirm language to the extent that a reasonable juror could not have considered the charge to have created an unconstitutional presumption." *Franklin*, 471 U.S. at 315, 105 S.Ct. at 1971. We see nothing in the court's instructions explaining that the State retained

---

**3.** The approved instructions in *County Court of Ulster County* told the jury that:

"The presumption or presumptions is effective only so long as there is no substantial evidence contradicting the conclusion flowing from the presumption, and the presumption is said to disappear when such contradictory evidence is adduced.

The presumption or presumptions which I discussed with the jury relative to the . . . weapons in this case need not be rebutted by affirmative proof or affirmative evidence but may be rebutted by any evidence or lack of evidence in the case."

*County Court of Ulster County*, 442 U.S. at 161 n. 20, 99 S.Ct. at 2227 n. 20.

the burden of proving that appellant obliterated the serial number.

Although flawed instructions regarding presumptions are subject to harmless error review, *see Rose v. Clark,* 478 U.S. 570, 579–80, 106 S.Ct. 3101, 3106–07, 92 L.Ed.2d 460 (1986), we cannot say that the instructions here were harmless. This presumption was the fundamental component of the State's case. *Cf. Gates v. Zant,* 863 F.2d 1492, 1502 (11th Cir.), *cert. denied,* 493 U.S. 945, 110 S.Ct. 353, 107 L.Ed.2d 340 (1989)("a *Sandstrom* error is harmless when the evidence of the element of the crime to which the instruction relates is overwhelming or when that element is not in issue"); *see generally* 5 Lynn McClain, *Maryland Evidence* § 303:2, at 461 & n. 39 (2d ed.2001)(collecting cases discussing harmless error analysis after *Sandstrom* error).

The record shows that jurors might have viewed these instructions as direction to treat the presumption as a shift in the burden of persuasion on the critical question of whether appellant was the person who obliterated the mark. By telling jurors only that the presumption was rebuttable, without explaining what "rebuttable" means, the trial court may have unconstitutionally shifted to appellant the burden of doing the rebutting, and thereby cast upon him the risk of non-persuasion. Following *Franklin, Sandstrom,* and *Diaz,* we shall vacate Graham's conviction under section 444.

## III.

### Sufficiency Of The Evidence

Although we conclude that the trial court erred in instructing the jury about the statutory inference, we shall address appellant's alternative contention that the evidence was not sufficient to convict on the obliteration charge, because if appellant is correct, principles of double jeopardy preclude retrial on that charge. *See, e.g., Winder v. State,* 362 Md. 275, 324, 765 A.2d 97 (2001)(appellate courts "normally address the sufficiency issues even when [it] decides to reverse ... on another ground[,]" because "[i]f ... the evidence admitted at

trial was insufficient to sustain the ... conviction, then double jeopardy prohibits the retrial" necessitated by the trial court's original error).

Appellant's sufficiency argument is based on two distinct premises. This first premise is a factual one—that the State relied solely on the section 444 presumption to convict him on the obliteration charge. The second premise is a legal one—that the presumption is unconstitutional on its face because there is no rational connection between the fact proved (possession) and the fact presumed (obliteration). *See County Court of Ulster County*, 442 U.S. at 157, 99 S.Ct. at 2225 (permissive inference is unconstitutional if "there is no rational way the trier of fact could make the connection permitted by the inference").

We reject the threshold factual premise underlying appellant's sufficiency challenge. Appellant contends that the State presented "absolutely no evidence that [he] removed a serial number," and instead relied solely on the section 444 presumption. We disagree.

Here, in addition to the evidence that appellant possessed the gun, the State presented evidence that appellant used that gun to assault two people on a public street in Baltimore. From this evidence, a jury rationally could conclude that appellant removed the serial number on the revolver he used to commit that crime. Specifically, we think that jurors reasonably might infer from appellant's deliberate use of the obliterated handgun to commit a violent crime, in a location and manner where there were witnesses and a need to escape quickly into the cityscape, that appellant destroyed the serial number to prevent the gun from being traced to him in the event he had to "ditch it" after the crime.

We need not decide whether, in these circumstances, the section 444 presumption creates an unconstitutional inference. *See, e.g., County Court of Ulster County*, 442 U.S. at 162–63, 99 S.Ct. at 2227 (intermediate appellate court erred in holding statutory presumption unconstitutional "on its face" when it could have determined constitutionality based solely on jury

instructions); *Tauber v. Montgomery County Council,* 244 Md. 332, 337, 223 A.2d 615 (1966)(courts "will refrain from deciding constitutional questions not essential to the proper disposition of the case on the record"). Even if there were no statutory presumption, we would still find that there was sufficient evidence from which a properly instructed and rational trier of fact could have found beyond a reasonable doubt that appellant removed the serial number from the revolver. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *White v. State,* 363 Md. 150, 162, 767 A.2d 855 (2001). We shall remand for a new trial on the obliteration charge, consistent with this opinion.

**CONVICTION AND SENTENCE FOR WEARING, CARRYING, OR TRANSPORTING A WEAPON AFFIRMED. CONVICTION AND SENTENCE FOR OBLITERATING IDENTIFICATION MARK ON FIREARM VACATED, AND CASE REMANDED FOR FURTHER PROCEEDINGS ON THAT CHARGE ONLY. COSTS TO BE PAID½ BY APPELLANT,½ BY MAYOR AND CITY COUNCIL OF BALTIMORE.**