STATE OF NORTH CAROLINA v. DERRICK LAMAR WILLIAMS

No. COA07-1057

(Filed 6 May 2008)

**1. Criminal Law— prosecutor's arguments—evidence outside record—abuse of discretion standard**

The trial court did not abuse its discretion in a second-degree rape case by allowing some improper statements made by the prosecutor during closing arguments to the jury that were outside the record because: (1) in light of the substantial evidence against defendant, as well as the charge to the jury that would have had a curative effect in mitigating the State's improper remarks, the remarks were not of such a magnitude that their inclusion prejudiced defendant; and (2) our appellate courts presume that jurors follow the trial court's instructions.

**2. Rape; Sexual Offenses— second-degree rape—sex offender registration—satellite monitoring**

The trial court did not err in a second-degree rape case by allegedly ordering defendant to register as a sex offender and to enroll for lifetime monitoring in the State's satellite registration program immediately upon entry of the judgment because: (1) to the extent defendant objects to being required to register as a sex offender immediately upon judgment entered against him, the trial court did not actually order defendant to register as a sex offender when the pertinent form was not signed by the trial court and was only applicable to defendants who did not receive active terms of imprisonment, and there was no oral order requiring defendant to register as a sex offender; (2) in regard to lifetime monitoring, the requirement for defendant to register will automatically go into effect upon his release from prison at the same time the order to enroll in the monitoring program goes into force according to its terms; and (3) to the extent defendant's argument concerns the way in which the monitoring will be conducted, that issue was not yet ripe for review since the program was new, and thus commenting on the substance of the policies and procedures of the program would involve mere speculation.

Appeal by defendant from judgment and order entered 27 March 2007 by Judge Thomas H. Lock in Superior Court, Cumberland County. Heard in the Court of Appeals 4 March 2008.

STATE v. WILLIAMS

[190 N.C. App. 173 (2008)]

*Attorney General Roy Cooper, by Assistant Attorney General Chris Z. Sinha, for the State.*

*Greene & Wilson, P.A., by Thomas Reston Wilson, for defendant-appellant.*

WYNN, Judge.

Defendant Derrick Lamar Williams appeals his conviction and sentence for second-degree rape. After a careful review of Defendant's arguments on appeal, as well as the record and transcripts before us, we conclude that he received a fair trial, free of prejudicial error, and affirm his conviction and sentence.

The State introduced evidence at trial which tended to show that Defendant raped K.B. at a small party in Fayetteville on the evening of 24 June 2005. However, Defendant testified that the sex was consensual and had taken place after he and K.B. had also engaged in oral sex. Others present at the party, as well as one of K.B.'s coworkers and several police officers, corroborated much of K.B.'s testimony, but only Defendant and K.B. were present in the apartment when the rape took place. According to trial testimony, Defendant's DNA was found in K.B.'s vagina, but oral swabs were not taken because K.B. complained only of vaginal penetration to the police and medical personnel.

At the conclusion of Defendant's trial, the jury returned a verdict finding him guilty of second-degree rape. After entering judgment against him, the trial court sentenced Defendant to eighty-four to one hundred months' imprisonment and ordered him, upon registration as a sex offender, to be monitored for life in the State's satellite registration program for sex offenders. Defendant now appeals, arguing that the trial court erred by (I) denying his motion for a mistrial following improper statements made by the prosecutor during his closing arguments to the jury; and (II) requiring Defendant to register as a sex offender and be monitored for life in the State's satellite registration program.

I.

[1] Defendant first argues that the trial court erred by denying his motion for a mistrial following improper statements made by the prosecutor during closing arguments to the jury. However, after a careful review of the trial transcripts, we observe that defense counsel only objected to the prosecutor's comments and excepted to the

trial court's ruling to overrule the objection, but failed to move for a mistrial. As such, we review Defendant's argument on appeal only as it relates to whether the prosecutor's remarks were improper. We conclude that, although they were, they did not ultimately prejudice Defendant.

As held by our Supreme Court,

> The standard of review for improper closing arguments that provoke timely objection from opposing counsel is whether the trial court abused its discretion by failing to sustain the objection. In order to assess whether a trial court has abused its discretion when deciding a particular matter, this Court must determine if the ruling could not have been the result of a reasoned decision.

*State v. Jones*, 355 N.C. 117, 131, 558 S.E.2d 97, 106 (2002) (internal citations and quotation omitted). In applying this standard of review, we must first determine whether the remarks were improper, such as "statements of personal opinion, personal conclusions, name-calling, and references to events and circumstances outside the evidence, such as the infamous acts of others." *Id.* If we deem the remarks improper, we must then decide if they were "of such a magnitude that their inclusion prejudiced defendant[.]" *Id.*

Here, defense counsel objected at trial to the prosecutor asking the jury in his rebuttal closing arguments: "Do you recall they took an oral swab of [K.B.'s] mouth? You heard—did you hear that technician say anything about finding any of the defendant's DNA inside her mouth?" The prosecutor went on to say, "Well, that would have been there, ladies and gentlemen, if, as he put it, he could not achieve an erection and he had her to help him to do so. . . . [I]f for no other reason, that's enough to disbelieve everything that defendant told you over there, that alone." After the jury began deliberations, defense counsel renewed the objection, noting to the trial court that the State's evidence "was clear that there was [sic] never any oral swabs collected[.]" Indeed, although the nurse who conducted the rape kit examination of K.B. testified that she took a cheek swab of K.B. to get her DNA, she also stated that she did not take any oral swabs because K.B. had complained only of vaginal penetration. Given that the prosecutor referenced "events and circumstances outside the evidence," these remarks were improper. *Id.*

However, when overruling the defense objection, the trial court stated: "Even if the state's argument was inconsistent with the evi-

dence, I certainly did charge the jury that it was their duty to recall all the evidence and that if their recollection of the evidence differed from the state, they are to rely upon their own recollections[.]" The transcript does indeed show that the trial court made this charge to the jury, both prior to the State's closing arguments and again during the jury instructions, immediately prior to their deliberations.

In light of the substantial evidence against Defendant, as well as the charge to the jury that would have had a curative effect in mitigating the State's improper remarks, we hold that these remarks were not "of such a magnitude that their inclusion prejudiced defendant[.]" *Id.* The jury heard from K.B. and Defendant as to their conflicting versions of events on the night in question; although the prosecutor's improper remarks cast doubt on the veracity of Defendant's account, the jury also heard the nurse who conducted the rape kit state unequivocally that she did not take any oral swabs of K.B.'s mouth, but only a cheek swab for her DNA. The jury was twice instructed to resolve this type of discrepancy in favor of their own recollections of the evidence presented, rather than what the State summarized. Our appellate courts "presume 'that jurors . . . attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given to them.' " *State v. Jennings*, 333 N.C. 579, 618, 430 S.E.2d 188, 208 (quoting *Francis v. Franklin*, 471 U.S. 307, 324 n.9, 85 L. Ed. 2d 344, 360 n.9 (1985)), *cert. denied*, 510 U.S. 1028, 126 L. Ed. 2d 602 (1993). Accordingly, we hold that the prosecutor's comments, while improper, were not prejudicial to Defendant.

II.

[2] Next, Defendant contends that the trial court erred by ordering him to register as a sex offender and to enroll for lifetime monitoring in the State's satellite registration program immediately upon entry of the judgment against him. We disagree.

Defendant was visiting his daughter in Fayetteville when he committed the rape but lived in Las Vegas and was arrested there; at the time of the trial, he was living in Phoenix, Arizona. As such, he asserts that he does not fall within any of the categories of person— State residents, nonresident students, and nonresident workers—to which the sex offender registration and monitoring statutes apply. He therefore asserts that the trial court erred by ordering him to register as a sex offender in North Carolina, and by entering judicial findings

and an order subjecting him to lifetime satellite monitoring, prior to the completion of his prison sentence.

Nevertheless, as the record makes clear, the trial court did not actually order Defendant to register as a sex offender. Rather, the form "Notification of Requirement to Register as Sex Offender who Committed an Aggravated Offense," included in the record, was not signed by the trial court, as it is applicable only to defendants who did not receive active terms of imprisonment. Further, there is no oral order from the trial court in the transcript that requires Defendant to register as a sex offender. Accordingly, to the extent Defendant objects to being required to register as a sex offender immediately upon judgment entered against him, that portion of his argument is overruled.

However, the trial court did sign and enter "Judicial Findings and Order as to Satellite-Based Monitoring for Sex Offenders—Lifetime Monitoring." The findings state that the trial court has ordered Defendant to be imprisoned and that "[t]he defendant was convicted of a reportable conviction . . . and is required to register under Part 3 of Article 27A of Chapter 14 of the General Statutes because the defendant is classified as a sexually violent predator, is a recidivist, or was convicted of an aggravated offense[.]" Based upon those two findings, the order provides that "the defendant shall be enrolled in a satellite-based monitoring program for his/her natural life" and "placed on unsupervised probation for the period for which he/she is subject to satellite-based monitoring." However, the requirement to enroll goes into force only "upon completion of the defendant's sentence and any term of post-release supervision."

Defendant contends that this order should be reversed because it is based in part on the erroneous finding that he is required to register as a sex offender. However, North Carolina law states that a current State resident with a "reportable conviction" *shall* register "[w]ithin 10 days of release from a penal institution or arrival in a county to live outside a penal institution[.]" N.C. Gen. Stat. § 14-208.7(a)(1) (2007). Thus, according to the plain meaning of the statute, Defendant, as a current North Carolina resident, albeit one in prison, "shall register" as a sex offender within ten days of his release or arrival in a county to live outside a penal institution. As such, the requirement for Defendant to register will automatically go into effect upon his release from prison, at the same time the order to enroll in the monitoring program goes into force according to its terms.

To the extent that Defendant's argument on appeal concerns the way in which the monitoring will be conducted, we find that issue not yet ripe for our review. The sex offender monitoring program is new, established by statute in 2006, and the law states only that, "[t]he Department of Correction shall establish a sex offender monitoring program that uses a continuous satellite-based monitoring system and shall create guidelines to govern the program." N.C. Gen. Stat. § 208.40(a). As conceded by the State in oral arguments to this Court, the policies and procedures of the program are in Department of Correction manuals to which neither the State nor Defendant has access. Thus, we have no means of determining whether Defendant will continue to be monitored by the State of North Carolina even if he returns to Arizona or Nevada. Until Defendant can make some showing that the monitoring is itself a violation of his rights or somehow prevents his ability to leave the State of North Carolina, we decline to engage in speculation as to the substance of the policies and procedures of the program. We reject Defendant's arguments concerning the requirement to enroll in the satellite monitoring program.

No prejudicial error in part; affirmed in part.

Judges BRYANT and JACKSON concur.