**NOT FOR PUBLICATION**

FILED

SEP 09 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| FRANK TAYLOR,<br><br>　　　　Petitioner - Appellant,<br><br>　v.<br><br>D. K. SISTO,<br><br>　　　　Respondent - Appellee. | No. 09-15341<br><br>D.C. No.<br>2:06-cv-02878-GEB-CHS<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Eastern District of California
Garland E. Burrell, District Judge, Presiding

Argued and Submitted February 9, 2010
San Francisco, California

Before: NOONAN, BERZON, and IKUTA, Circuit Judges.

The state appellate court did not make "an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding" in concluding

that the trial court did not err in crediting the prosecutor's race-neutral explanations

---

[*]　This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

for striking three jurors.[1]  28 U.S.C. § 2254(d)(2); *see also Rice v. Collins*, 546

U.S. 333, 339 (2006).  Given that the "evaluation of the prosecutor's state of mind

based on demeanor and credibility lies 'peculiarly within a trial judge's province,'"

*Hernandez v. New York*, 500 U.S. 352, 365 (1991) (plurality opinion) (quoting

*Wainwright v. Witt*, 469 U.S. 412, 428 (1985)), and "[s]tate court factual findings

. . . are presumed correct," *Rice*, 546 U.S. at 338–39, the state court was not

objectively unreasonable in crediting the prosecutor's statements that: (1) he struck

Mr. L because he was inexperienced and soft-spoken; (2) he struck Ms. W because

her past experiences with crime and the police made it possible that she might

harbor bias against law enforcement; and (3) he struck Ms. D because, among

---

[1] The state appellate court assumed that Taylor had made a prima facie case
of purposeful discrimination based on the prosecutor's use of peremptory strikes,
*see Batson v. Kentucky*, 476 U.S. 79, 96–97 (1986), and thus focused on the
question whether Taylor had carried his burden of proving purposeful
discrimination on the part of the prosecutor.

other things, she provided a "resounding yes" to the question of whether she had a negative experience with law enforcement.[2]

Nor can Taylor prevail on his argument that jurors whom the prosecutor did not challenge were comparable to the challenged jurors, because the state court's conclusion to the contrary was not objectively unreasonable. *See Cook v. LaMarque*, 593 F.3d 810, 826 (9th Cir. 2010). While Taylor raises grounds to question the prosecutor's credibility regarding his reasons for striking the jurors, the Supreme Court has recently instructed, "[r]easonable minds reviewing the record might disagree about the prosecutor's credibility, but on habeas review that

---

[2] The dissent concludes, based on its own review of the record, that three of the prosecutor's stated reasons with regard to Ms. D were "patently pretextual," and therefore the prosecutor was partially motivated by race. Dissent Op. at 1. But AEDPA does not permit us to make our own credibility determinations. Rather, our standard is doubly deferential: unless the state appellate court was objectively unreasonable in concluding that a trial court's credibility determination was not clearly erroneous, we must uphold it. *Rice*, 546 U.S. at 338–39. The dissent's approach is contrary to Supreme Court precedent, and accordingly, we reject it. *See id.*; *see also Harrington v. Richter*, --- S. Ct. ----, 2011 WL 148587, at *11–12.

3

does not suffice to supersede the trial court's credibility determination." *Rice*, 546 U.S. at 341–42. Taylor's *Batson* claim therefore fails.[3]

The state appellate court was not objectively unreasonable in interpreting the trial court's instructions to the jury regarding the "large box at the doorway to this courtroom" as telling jurors to put aside biases and prejudices rather than to ignore life experiences. *See* 28 U.S.C. § 2254(d)(2). The state appellate court's rejection of Taylor's claim that these instructions violated his Sixth Amendment right to a fair trial was not contrary to any Supreme Court precedent that "squarely addresses" the issue in this case. *Wright v. Van Patten*, 552 U.S. 120, 125 (2008) (per curiam). To the extent Supreme Court cases establish a "general standard" that defendants are entitled to a jury whose members are not stripped of their common sense, the state appellate court reasonably exercised its greater latitude to determine that the trial court's instruction did not violate this general standard.

---

[3] Because the state court could reasonably credit the prosecutor's stated reason for striking Ms. D, the state court did not make an "unreasonable application" of *Batson* by noting an additional reason not raised by the prosecutor for rejecting the argument that Ms. D was comparable to other jurors. While the Supreme Court has held that a *Batson* challenge does not allow a court to come up with its own non-discriminatory reason for striking a juror when the prosecutor's "stated reason does not hold up," *Miller-El v. Dretke* 545 U.S. 231, 252 (2005), here the prosecutor's stated reason *did* "hold up." The dissent concludes otherwise, but its *de novo* review is a far cry from the "doubly deferential" review contemplated by AEDPA. *See Rice*, 546 U.S. at 338–39.

*Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009). Accordingly, we reject Taylor's challenge to the state appellate court's denial of his Sixth Amendment fair trial claim.

We also reject Taylor's argument that the state appellate court erred in denying his claim that his due process rights were violated by jury instructions that "'[a] willful or wanton disregard for the safety of persons or property includes, but is not limited to . . . three or more Vehicle Code violations.'" The state appellate court's determination that this language defines a new felony (the act of committing three or more moving violations or causing property damage while fleeing a peace officer, *see* Cal. Veh. Code. § 2800.2(b)), and does not create a mandatory presumption, is not contrary to Supreme Court precedent. *See Francis v. Franklin*, 471 U.S. 307, 313–15 (1985).

Finally, the state appellate court's denial of Taylor's claim that his due process rights were violated by the trial court's failure to instruct the jury, sua sponte, on which underlying traffic violations result in "points" was not contrary to clearly established Supreme Court precedent. Given that the violations at issue did result in points, and it was not disputed that defendant caused property damage, this omission cannot be said to have "so infected the entire trial that the resulting conviction violates due process," *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)

5

(quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)) (internal quotation marks omitted).  Thus, we also reject this due process claim.

**AFFIRMED.**

*Taylor v. Sisto*, No. 09-15341

NOONAN, Circuit Judge, concurring:

   We act within the restraints set on federal courts by AEDPA and its interpretation by the Supreme Court of the United States. So doing, we defer to the California Court of Appeal's benign interpretation of the trial judge's erroneous instruction stripping the jurors of their use of common sense.

*Taylor v. Sisto*, No. 09-15341

BERZON, Circuit Judge, dissenting:

I dissent with respect to the striking of Ms. D from the jury. The prosecutor proffered three transparently pretextual justifications for striking Ms. D—the only African-American left in the jury pool and the sole African-American woman in the *entire* pool—before he finally stumbled upon a plausible reason for excluding her. Because his first three explanations were patently pretextual, I have no doubt that the "peremptory strike was 'motivated in substantial part' by race." *Crittenden v. Ayers*, 624 F.3d 943, 959 (9th Cir. 2010) (as amended) (quoting *Cook v. LaMarque*, 593 F.3d 810, 815 (9th Cir. 2010)). As Taylor's equal protection rights were violated under the rule articulated in *Batson v. Kentucky*, 476 U.S. 79 (1986), I would grant the petition.

1. As an initial matter, it is not at all clear that the state court's determination regarding Taylor's *Batson* claim is entitled to AEDPA deference. The California Supreme Court summarily denied Taylor's petition for review, so we look to the state court of appeals as the "last reasoned state-court opinion." *Musladin v. Lamarque*, 555 F.3d 830, 834–35 (9th Cir. 2009). In reaching its determination that the exclusion of Ms. D was not the result of purposeful

-1-

discrimination, the state court relied on a justification for striking her that was not advanced by the prosecution—namely, that she believed the police should not pursue cars for minor offenses. Prior to the state court's decision, the Supreme Court prohibited reviewing courts from "thinking up any rational basis" for excluding jurors: "The Court of Appeals's . . . substitution of a reason for eliminating [the juror] does nothing to satisfy the prosecutors' burden of stating a racially neutral explanation for their own actions." *Miller-El v. Dretke*, 545 U.S. 231, 252 (2005).

Here, the court of appeals incorrectly supplied its own reasons justifying Ms. D's exclusion, thereby "appl[ying] a rule that contradicts the governing law set forth in [Supreme Court] cases." *Musladin*, 555 F.3d at 834 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Its decision in that respect was "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," and not entitled to AEDPA deference. 28 U.S.C. § 2254(d)(1).

2. I would grant the petition even if the state court had applied the correct federal law as determined by the U. S. Supreme Court, because, as I explain below, the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

At a hearing on Taylor's *Batson* motion, the prosecutor began with the following explanation for striking Ms. D: She had been the victim of two sexual assaults perpetrated by African-American men (she had been dating one of her assailants at the time of the assault). The prosecutor speculated that "emotional baggage" from these events could bias her *in favor* of *his* case. He then went on to admit he was no "psychologist," but suspected she might "overcompensate" for her racial biases against African-Americans by holding him to a higher standard.

This explanation is so absurd as to be affirmatively indicative of racial bias. Justice Marshall observed that "[a] prosecutor's own conscious or unconscious racism may lead him easily to [a] conclusion" regarding an African-American juror "that would not have come to his mind if a white juror had acted identically." *Batson*, 476 U.S. at 106 (Marshall, J., concurring). That prediction is especially insightful here: If Ms. D were a white woman who had been sexually assaulted by a white man she was dating, the prosecutor would not have suggested she might be racially biased against white people—and with good reason, as the theory is highly suspect to say the least. Coupled with the unbelievable suggestion that the prosecutor was concerned that Ms. D would favor *his* case, the prosecutor's primary "neutral" explanation was pretextual, to put it mildly.

On top of all that, there is no support in the record for the prosecutor's

concerns that Ms. D's perceived "emotional baggage" might affect her performance as a juror. After finding out there was no element of sexual assault in the case (Taylor was accused of evading a peace officer and revving his engine to push a patrol car backwards), Ms. D gave an "iron clad guarantee" that she was "certain [she] could act in a fair and impartial manner if selected to be a juror," and that Taylor's race (unsurprisingly) would not affect her decision.

The prosecutor's second justification, that Ms. D's brother had been arrested for drug crimes, fares no better, because it cannot withstand comparative analysis. The *majority* of the seated jurors had indicated that either they, a close friend, or a relative had been arrested or convicted for crimes ranging from DUIs, "drugs", burglary, reckless driving, mail fraud, and even murder. The state court of appeals dismissed this comparative analysis in the main by reiterating that none of these comparable jurors "had experienced sexual assaults." Of course, the record belies any argument that Ms. D's experience as a victim of a sexual assault would influence her performance as a juror; the prosecutor expressed concerns about *racial biases* arising from the assault, not the assault itself. So the only plausible interpretation of the state court's basis for rejecting the comparative analysis is that none of the comparable jurors had been the victim of crimes perpetrated by African Americans. And this point is only pertinent if the state court adopted the suspect

premise, advanced by the prosecutor, that Ms. D might be biased against African Americans. Again, Justice Marshall hit the nail on the head when he predicated that "[a] judge's own conscious or unconscious racism may lead him to accept [a prosecutor's racially tinged] explanation as well supported." *Batson*, 476 U.S. at 106 (Marshall, J., concurring).

Third, the prosecutor explained that "[Ms. D] responded positively" when he asked if she thought "just because of [Taylor's] race maybe he is more likely innocent or maybe he's not gotten a very fair shake in the system." In actuality, Ms. D acknowledged the existence of racial profiling, explaining that "some officers just like anybody else can't separate feelings they may have for the people from this individual's race." She then unequivocally stated she had no knowledge about the Sacramento Police, and she would *not* be more lenient on the defendant because of his race: "[His race] wouldn't matter. I hold you to the same standard no matter what race he was." Ms. D made an uncontroversial observation about racial profiling, and she offered no thoughts on Taylor's circumstances in particular. The prosecutor's "mischaracterization of [Ms. D's] answer is evidence of discriminatory pretext." *Cook*, 593 F.3d at 818.

After advancing these three plainly pretextual explanations, the prosecutor finally bumped into a plausible justification for striking Ms. D. When asked if

-5-

"anybody had any negative experience with law enforcement," Ms. D "threw her head back and said, yes." While some seated jurors discussed incidents that could have negatively affected their views of law enforcement, the record does not suggest they answered as energetically as Ms. D. Determinations based on demeanor lie "peculiarly within a trial judge's province," *Hernandez v. New York*, 500 U.S. 352, 365 (1991) (quotation omitted), and this justification, standing alone, might constitute a valid race-neutral explanation.

But "'the prosecution's proffer of [one] pretexual explanation naturally gives rise to an inference of discriminatory intent,' even where other, potentially valid explanations are offered." *Ali v. Hickman*, 584 F.3d 1174, 1192 (9th Cir. 2009) (quoting *Snyder v. Louisiana*, 552 U.S. 472, 484 (2008)). Here, the single plausible justification cannot overcome the inference of discriminatory intent arising from the prosecution's three absurd justifications for striking Ms. D. I therefore would hold that the prosecutor was "motivated in substantial part by discriminatory intent." *Snyder*, 552 U.S. at 485; *see also Crittenden*, 624 F.3d at 958. The state court ignored serious problems with three out of four of the prosecutor's stated reasons. It also dismissed a comparative analysis by relying on an implausible argument, advanced by the prosecutor without any basis in the record, that Ms. D would be biased *against* African-Americans. Thus, even if the

state court's decision was not flat out "contrary to clearly established Federal law," its conclusion was "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1) & (2).

Because I would reverse the conviction on *Batson* grounds, I would not reach the other issues addressed by the majority. I respectfully dissent.